FRED HANSON, Respondent, v. THE MENOKEN FARMERS CO-OPERATIVE ASSOCIATION, a Corporation, and The Northwestern Trust Company, a Corporation, Appellants.

(202 N. W. 135.)

**Action — action against elevator company and surety for value of flax stored must proceed in contract and not in conversion.**

Where, in one action and upon one complaint, one seeks to recover the value of certain flax, stored in an elevator and not returned to the owner upon demand, against the elevator company and, also, against the company's surety, pursuant to a warehouseman's bond issued, the cause of action, if prosecuted against both defendants, must proceed in contract and not in conversion against both defendants, principal and surety, as tort feasors.

Opinion filed December 31, 1924.

Action, 1 C. J. § 148 p. 1023 n. 91 New.

In District Court, Burleigh County, *Coffey*, J.

Action, treated as in conversion, to recover the value of certain flax.

Defendants have appealed from the judgment and from an order denying judgment non obstante, or, in the alternative, for a new trial.

Reversed.

*L. J. Wehe*, for appellants.

*T. R. Bangs,* of counsel for the Northwestern Trust Company, one of the defendants and appellants.

*O'Hare & Cox,* for respondent.

BRONSON, Ch. J.   Plaintiff seeks to recover, through conversion, the value of flax stored in an elevator.   The facts necessary to be stated are:—Plaintiff was a farmer.   Defendant Co-operative Association formerly operated and maintained an elevator at Menoken, N. D.   Defendant Trust Company executed a bond to secure the faithful performance of the Association's duties as a public warehouseman.   The complaint alleges that on Oct. 7th, 1919, defendant Association received in storage from plaintiff about 182 bushels of flax at its elevator at Menoken and issued therefor its storage receipt as prescribed by the laws of the state; that on August 1st, 1919, defendant Trust Company issued its surety bond conditioned for the faithful performance of the elevator's duties as a public warehouseman; that on March 1st, 1922, defendants' Association made default in the redemption of the storage ticket and has failed to redeem said ticket or to redeliver the grain represented by it; that prior to the commencement of the action plaintiff made demand upon defendants for redelivery of the grain which demand was refused; that at the time of such demand and shortly thereafter the grain was of the reasonable value of $3.50 per bushel being the highest market price between the time of the demand and the present time.   Judgment accordingly was demanded for the sum of $640.00.

Plaintiff stated and insisted before the trial court that he was suing for conversion and upon contract; he insisted upon the right to establish conversion and the right to recover as damages the highest market value of the flax from the time of the demand to the time of the trial.   Over objection of the defendants, he was permitted so to do, although the trial court during the course of the trial did not specifically overrule defendants' objections and determine that the action was one for conversion.   The court, however, submitted the issues to the jury upon the theory of conversion and instructed the jury upon the right of plaintiff to recover the highest market value of the flax up to the time of the suit.   The court also instructed the jury that if it found a verdict against the Association it should also find a verdict against the defend-

ant Trust Company. The highest market price, namely, $2.56 per bushel, was on May 5th, 1922. The jury returned a joint verdict against both defendants for such market value on May 5th, 1922, without allowance or deduction for any storage charges as provided by the contract contained in the storage receipt issued. Defendants made a motion for judgment non obstante or in the alternative for a new trial. This motion was denied. From the order so made and from the judgment, defendants appealed. Defendants, upon this appeal, have made many specifications of error. In view of the fact that a new trial must be granted through one error of the trial court affecting the entire proceedings, it is necessary to consider only this one error. It is evident that plaintiff had a cause of action upon the bond against defendants, respectively, as principal and surety, in contract alone and not in tort. Manifestly, the defendant Trust Company was not a tort feasor; its liability rests in contract alone; the cause of action, as alleged, if a cause of action at all, against both defendants, is a cause of action in contract. It is indeed anomalous to have the same complaint regarded as a tort action against one defendant and as a contract action against another; assuredly, it could not be regarded as a tort action against both. For fundamental reasons, further discussion is unnecessary. The trial court simply overlooked the necessity of preserving the contract features of the action, if the same were to be pressed against both defendants, when the time came for it to orally instruct the jury. The court had made some observations in this regard during the course of the trial. Of necessity, the action must be prosecuted as a contract action if plaintiff intends to hold both defendants jointly liable thereupon in this action; otherwise, the action must be dismissed as to defendant Trust Company. The judgment is reversed and a new trial granted.

NUESSLE, J., concurs.

JOHNSON, J. (specially concurring). I concur in the result arrived at in the opinion written by the Chief Justice. There are, it seems to me, substantial reasons why a reversal is necessary other than those assigned in that opinion.

The action is in conversion. The plaintiff so stated at the trial and so contends in this court. The court, during the progress of the trial, in effect, held that the action was on a contract and that, as to the market price, the contract between the parties, as shown by the storage ticket, was controlling. In instructing the jury, however, the court adopted the conversion theory *in toto,* notwithstanding the fact that the defendants are not joint tort-feasors; there is no community of wrong doing as far as the defendants are concerned. The elevator company may be guilty of conversion; the trust company cannot be under the facts in the record. Its obligation is measured entirely by the terms of the surety bond and the statutes applicable thereto. Its obligation is wholly contractual.

The record is in much confusion on the question of market value. The plaintiff proceeds on the theory that he is entitled to recover the reasonable value of the flax as shown by sales in the community, among farmers and generally for seeding purposes. Plaintiff, accordingly, made no attempt to prove the market value at the elevators, i. e., on the regular grain market at Menoken, but relied upon the testimony of one King who based his estimate of value on transactions among farmers. He says that the market value at the elevators in Menoken was lower than the values among the farmers to which he testifies. Plaintiff's witness, George Will, had no knowledge of the market value at the elevators, but only for seed purposes; he says that sometimes he paid a premium. He purchased flax for resale for seed. Whether the value thus sought to be established would be a proper measure of damages as between the plaintiff and the defendant elevator company, we need not decide. It is clearly not the proper measure of damages in a suit upon the surety bond. The value which the surety obligated itself to pay in the event the elevator company failed to deliver the grain, or pay its value, was the market value. There is a market at Menoken and the value of the flax on that market was contemplated in the bond. The defendant, however, supplied this deficiency in the plaintiff's proof, by establishing by competent evidence, the market value of flax at Menoken on March 1, 1922, at $2.24 per bushel.

The record is somewhat unsatisfactory on the question of demand. Plaintiff, himself, testified that on or about March 1, 1922, he demanded the flax from the defendant elevator company. On cross ex-

amination, when pressed to give details, he testified that he made this demand on one King, who was Secretary of the Menoken Farmers Elevator Company, at that time, and that he also made a demand by letter on Olson, the President of the company, at Menoken. He does not state the particulars or the nature of the demand. Neither this letter nor a copy was offered in evidence and Olson explicitly denies that any such letter was received from plaintiff. There is a letter in the record dated February 28, 1921, to Olson, which may be construed as a demand for the flax, but aside from that there is no evidence whatever that a demand was ever made on Olson, the President of the company, on or about March 1, 1922.

The demand on King is scarcely more definite and King's answer to the alleged demand is somewhat inconclusive. It is not a refusal. King testified that on the occasion of the so-called demand he answered plaintiff to the effect that the company did not "have the flax at the time, but I understood that the matter had been left to the President and the money was there to take care of it." It does not appear that Hanson made any attempt to get the money or the flax from the president of the company with whom the matter had been left. It must be noted, in this connection, that the company had gone out of business more than a year before; that the plaintiff knew this fact; and that Olson, to plaintiff's knowledge, had charge of the affairs of the company.

King testifies that he is a farmer; and that one Olson, the president of the defendant elevator company, had charge of its affairs. I am clearly of the opinion that King did not have authority to bind the company by any admissions, statements, or representations, under the facts in the record, and in the absence of some proof that there had been conferred upon him, by the proper officials of the corporation, authority to act in its behalf. There is not the slightest proof that King had any authority whatever to act for the company in matters pertaining to outstanding storage tickets, or in any connection with this particular transaction with his brother-in-law. His authority to make representations binding on the company in connection with the alleged demand, as well as his authority to receive a demand, are sought to be presumed or inferred from the fact that he was the secretary of the company. I do not think that any such power may be presumed without proof. The

duties of the secretary of the ordinary business corporation are largely clerical; he keeps books and records; and he may have the custody of the corporate seal. Ordinarily, in the absence of express authority, he has no general power, by virtue of his office, to make contracts for the corporation. See Thomp. Corp. §§ 1505, 1517. "The Secretary of a corporation has no power, merely as secretary of the company, to make contracts for it. The secretary is one of the corporation officers, but he has practically no authority." Cook, Corp. § 717. Admissions and declarations of a secretary do not bind the company when not made in connection with its business unless it be made to appear that he was expressly authorized to make them. Chicago v. Stein, 252 Ill. 409, 96 N. E. 886, Ann. Cas. 1912D, 294; Hardwick Sav. Bank & T. Co. v. Drenan, 72 Vt. 438, 48 Atl. 645; Cook, Corp. §§ 726, 727. Not only was King without authority, as far as this record shows, to refuse to deliver the flax, so as to bind the company, but the evidence affirmatively shows that he did not, in fact, refuse to deliver the grain, or pay its value, but notified the plaintiff that Olson was the man who apparently had the authority to deal with Hanson and that resources were probably available to satisfy his claim. The fact that he stated the elevator did not have the grain at the time, even if such statement be held binding on the company, is not alone conclusive evidence of a conversion, in the absence of a showing either that the company was unwilling or had put it out of its power to discharge its obligations under the warehouse receipt. I think the evidence is wholly insufficient to support a finding of a demand on the defendant elevator on or about March 1, 1922.

Defendant's exhibit 7 is a letter, addressed to Olson, dated Feb. 28, 1921, and signed by plaintiff. Here plaintiff says among other things: "Being that your elevator is now sold and I am not yet ready to sell I should like if you would furnish me with a transfer to wherever you have it stored, or with the actual flax itself." Plaintiff knew that the company had sold out; but he was not ready to sell his flax. He makes no tender of storage charges. On July 19, 1921, the attorney for the defendant elevator company, Mr. Wehe, wrote plaintiff and asked him to produce the storage ticket at his office. Again on August 5, 1921, this Attorney wrote plaintiff "to present for payment the flax storage ticket held by you." On August 9, 1921, plaintiff answered, to the effect that "my understanding of the ticket is that I may hold my own

grain as long as I see fit, and further that if you sell this grain without making provision for settling with me that you thereby make yourself liable." Plaintiff then suggests that defendant make a cash offer, but not less than the price at which it sold the flax, less storage charges to date of sale. Then comes a letter dated September 1, 1921, which contains a formal demand as follows:

"I direct your attention to section 4 of said storage ticket No. 80, and hereby advise you that I elect to receive from your company, under the provisions of said storage ticket, a like amount of flax of the same kind and quality which I stored with your company. Said flax to be delivered to me forthwith at the place it was delivered to you, namely Menoken, North Dakota. I stand ready at this time to surrender said storage ticket No. 80 to you upon being advised that said flax is ready for delivery to me at Menoken, and at that time I will pay to you the legal charges for your services in connection with such flax as set forth in said storage ticket."

On September 13th, 1921, plaintiff wrote Mr. Wehe, and, among other things, said that he was "still looking to the elevator for delivery of my flax." On April 14th, 1922, plaintiff writes as follows:

Menoken Farmers Elevator Company,
Menoken, N. Dak.
Gentlemen:

On September 1st, I made demand that my flax be delivered to me at the place it was stored. Have not as yet heard from you regarding your having secured same for me.

Kindly let me hear from you at once as I want it for seed this spring.

Yours very truly,

Fred Hanson.

The concluding paragraph of the letter dated September 1st, 1921, contains a suggestion that if the elevator desires it may pay the plaintiff, as an alternative to delivering the flax, $400.00. It is clear to me that the plaintiff, in writing this letter, intended to and did, in fact, make a formal demand for the delivery of the flax at Menoken, according to the terms of the storage ticket. This letter was excluded by the trial court, perhaps, because of the suggestion in the concluding para-

graph, that a cash payment of $400.00 would be accepted. It should have been received. If prejudice or confusion was apprehended by reason of the last paragraph either could have been obviated by a cautionary instruction. The evidence and offers of proof tend to show that the defendant elevator promptly purchased flax of the same grade, kind and quality, and on or about September 24, 1921, was ready, able and willing to deliver flax according to the demand, but that the plaintiff then refused to accept the grain because he had "no room for it." Most of this evidence was excluded by the trial court. Defendant also offered to prove that on the day when the demand was made flax was worth $1.67 a bushel.

The only demand shown by the record was made on the defendant on September 1, 1921. There being evidence of the market value of the flax as of that date, the judgment could ordinarily be reduced so as to conform with the value thus established. The offer of the defendant to prove that it was able and willing to comply with this demand, and that it offered to return the flax, was excluded by the trial court. If the defendant offered to deliver the flax, in conformity with the demand, but the plaintiff refused to receive the same, then the demand would, in effect, be waived, and the defendant would not be guilty of conversion because of failure to comply therewith. We cannot correct this error by merely reducing the judgment. A reversal is necessary.

Our conclusion in this case does not mean that the rights of the holder of the storage ticket are terminated, or that the obligation of the defendant thereunder is at an end. There was no offer of proof that the tender of the flax was kept good. The contract still remains as the measure of the rights and duties of the parties. If a conversion should take place at a subsequent date, evidenced by a demand and a refusal, the rights of the ticket holder and the defendants would be adjudicated as of such date and under the facts as then existing.

CHRISTIANSON and BIRDZELL, JJ., concur.