FIRST NATIONAL BANK OF LOS ANGELES, Appellant, *v.* DICKSON
*et al.*, Respondents.

**1. Trover and Conversion—Certificates of Deposit—Measure of
Damages—Weight of Evidence.**

In an action for the conversion of certificates of deposit of a national
bank, on the issue of their value, the fact that prior to the conversion
they had been protested for non-payment, without explanation of the
cause, was evidence tending to show the insolvency of the bank, such
as would preclude the court from directing the verdict.

**2. Same—Evidence—Opinion—Relevancy.**

In an action for the conversion of certificates of deposit, on the issue
of value, it is proper to inquire of a person acquainted with the finan-
cial condition of the bank issuing them, whether or not, at the time of
the conversion, the bank was solvent.

**3. Same—Review—Reversible Error.**

In an action, for the conversion of certificates of deposit, where, on
the question of value, the court had improperly excluded the evidence
as to the insolvency of the maker, at the time of the conversion, the
appellant was not obliged to go further and show the insolvency of his
indorser, to make it reversible error.

(Argued May 17, 1888; reversed May 25; opinion filed October 1, 1888.)

Appeal from the district court of Minnehaha county; Hon.
JAMES SPENCER, Judge.

*Bailey & Davis*, for appellants.

The face value of commercial paper, it may be conceded, is
*prima facie* the measure of damages for its conversion.

It is competent, however, to show the insolvency of the maker
or any other circumstance to lessen the damages.    3 Suth. Dam.
522; *Potter* v. *Merchants' Bank*, 28 N. Y. 641 ; *Booth* v. *Powers*,
56 N. Y. 22; *Latham* v. *Brown*, 16 Ia. 118; *Holt* v. *Van Eps*, 1
Dak. 206.

In another view, there was evidence that tended to diminish
the value of the certificates.

They were protested before they were attached.    *Booth* v.
*Powers, supra.*

The testimony of E. A. Sherman, (shown to be qualified,) that he had examined the assets of the bank, should have been admitted upon the question of the value of the assets, and whether the bank was solvent.

*Winsor & Kittredge,* for respondent.

The respondent took the certificates with the indorsement of Young, and, in case the maker was insolvent, it had the right to look to Young to make up the deficiency.    In order, therefore, to reduce the damage sustained by the *prima facie* case, appellants must produce evidence showing the insolvency of Young, the indorser to the respondent, as well as the insolvency of the maker, the First National Bank of Sioux Falls.    *Menkens* v. *Menkens,* 23 Mo. 252.

We insist that appellants failed to show the insolvency of the maker of these certificates.    To be sure, they introduced protests, but that does not prove insolvency; and, even had it a tendency to do so, it does not establish to what extent the bank was insolvent.    Further, an inspection of the testimony fails to establish any proof as to the value of these certificates on the 6th day of March, 1886, the day of their conversion by appellants.

CARLAND, J.    The respondent commenced an action in the district court of Minnehaha county against appellants for the conversion of three certificates of deposit issued by the First National Bank of Sioux Falls to J. B. Young, on December 24, 1885, for the aggregate sum of $4,600.    The appellants justified the taking by said Joseph M. Dickson under a warrant of attachment issued in an action wherein George H. Hollister was plaintiff and J. B. Young was defendant.    At the trial the respondent called the appellant Dickson, who produced the certificates of deposit, which were introduced in evidence, together with the indorsement of J. B. Young thereon, transferring the same to respondent.    It was admitted that said certificates were levied upon by the appellant Dickson as sheriff on the 6th day

of March, 1886, in an action then pending wherein George H. Hollister was plaintiff and J. B. Young defendant. The respondent then rested. The appellants introduced in evidence certificates of protest showing that the certificates of deposit had been protested for non-payment prior to the date of the alleged conversion; and, after several ineffectual attempts to show that said certificates of deposit were worth less than their face value, called E. A. Sherman as a witness, who testified that he was president of the Minnehaha National Bank of Sioux Falls, and had been ever since its organization; that between February 1 and March 6, 1887, and after the bank was attached, he looked over the assets of the First National Bank of Sioux Falls; that he went through them with Mr. Garretson, the cashier of the Sioux National Bank of Sioux City, Iowa, with a view of ascertaining if it would be safe to assume the liabilities of said bank, and take their assets, in order to prevent a failure. The witness was then asked this question: "State what you found the character of the assets to be, whether they were good or bad, and whether you found the bank solvent or insolvent." The question was objected to as incompetent and immaterial. The objection was sustained, and exception taken. The witness further testified that he could judge of such assets as he saw; was acquainted with most of the men, and knew their financial standing. The witness was then asked, "What was the value of those assets?" to which an objection was made and sustained, and an exception taken. The respondent then moved the court to direct a verdict in its favor for the face value of the certificates and interest, which motion was granted by the court; to which ruling of the court appellants duly excepted. From the judgment rendered on said verdict appellants appeal, and assign the rulings of the court herein specified as error.

In actions for the conversion of instruments for the payment of money of the character mentioned in this action, the amount appearing to be due thereon, of principal and interest, at the time of the conversion, and the interest upon that aggregate from thence to the trial, is *prima facie* the measure of damages.

Civil Code, §§ 1970–1982; *Booth* v. *Powers,* 56 N. Y. 22; *Potter* v. *Bank,* 28 N. Y. 654; 2 Phil. Ev. (Cow. & H: Ed.) 228; 2 Pars. Cont. 471; *Decker* v. *Mathews,* 12 N. Y. 324; Sedg. Dam. 513; *Paine* v. *Pritchard,* 2 Car. & P. 558; *Mercer* v. *Jones,* 3 Camp. 477; *Evans* v. *Kymer,* 1 Barn. & Adol. 528; *St. John* v. *O'Connel,* 7 Port. (Ala.) 466.   It will then be seen that when the respondent had introduced the certificates of deposit in evidence, with the indorsement of the payee thereon, transferring same to the respondent, accompanied with proof of the conversion of the same by appellants, a *prima facie* case had been made.   The appellants, however, had the right to introduce any legal evidence which would tend to show that the certificates of deposit were not worth their face value at the time of the alleged conversion.   Among the facts which were competent to show the value of said certificates of deposit was the fact that the maker thereof was at the time of the alleged conversion insolvent.   *Potter* v. *Bank,* 28 N. Y. 655; *McPeters* v. *Phillips,* 46 Ala. 496; *Latham* v. *Brown,* 16 Iowa, 118; *Zeigler* v. *Wells,* 23 Cal. 179; *Cothran* v. *Bank,* 40 N. Y. Super. Ct. 401.   See, also, cases herein cited as to measure of damages.   That it was competent to show by proper testimony that the maker of the certificates of deposit was insolvent, does not seem to have been disputed at the trial.   The contention of counsel for respondent was that appellants had not introduced, or offered to introduce, any *competent* evidence of the insolvency of the maker of the certificates, viz., the First National Bank of Sioux Falls.   The appellants had introduced evidence which showed beyond dispute that at the time of the alleged conversion of the certificates of deposit they had been presented to the maker thereof for payment, and payment had been refused.   Was this evidence,—with the cause of the refusal to pay unexplained,—evidence in any degree tending to show the insolvency of the bank?   A debtor is insolvent when he is unable to pay his debts from his own means, as they become due.   Civil Code, § 2028.   In *Brown* v. *Montgomery,* 20 N. Y. 287, the trial court had charged the jury that the non-payment and protest of a bank-check was ev-

idence tending to show insolvency. DENIO, J., in delivering the
opinion of the court affirming the correctness of such a charge,
said: "For when a business man in a commercial town fails to
meet his paper, payable at a bank, and especially his checks
upon the bank at which he keeps his accounts, the natural in-
ference which every one draws is that he is no longer able to
pay his debts." In *Booth* v. *Powers,* 56 N. Y. 22, which was
an action for the conversion of a promissory note for the sum
of $1,500, the defendants in the court below offered to show
that the note had been presented for payment, and payment
refused, which offer was excluded. FOLGER, J., in delivering
the opinion of the court of appeals, uses the following lan-
guage: "The defendant also offered to prove that their testa-
tor took the necessary and proper steps to present the note
for payment, but that it was not paid, and that the makers
resided at the place in which the bank was situated, at which the
note was made payable. This proof was excluded. We think
that this was error. Proof of the inability of the maker to pay
his note affects its value. Evidence tending to show disability
is given, when it is testified that there is neglect or refusal
to pay it according to its terms." "Doubtless the fact of non-
payment is not of the same weight in every case. We have
seen that in the case last cited the non-payment of a check
upon the bank at which the drawer kept his account was reck-
oned of especial significance. Non-payment of a note dis-
counted for the accommodation of the maker, a man in busi-
ness in a commercial community, by a bank so related to him,
would not be much less. Non-payment of a note made by
such a person, at unusual time and on unusual terms, for a
consideration not strictly in the line of his ordinary business,
payable at a bank designated merely for the convenience of the
parties, would be less; and of a note made by one of an occu-
pation, the habits and usages of which did not train him or
those about him to a jealous care for credit, would not be of
much, if of any, weight. The value of the evidence depends
upon the facts of each case. But so long as every man in com-

mercial pursuits, in a community likewise engaged, knows the value of a good credit, does not suffer it to be lightly lost, and is painfully aware that a lapse in a punctual performance of his business obligations does tend to the loss of it, the inference will be natural, from his failure to pay according to his engagement, that he is unable to pay. Such testimony may be met, of course, by evidence of reasons existing which justified a refusal to pay, or excused neglect so to do, or by evidence of real pecuniary ability." When we consider that in this action the maker of the certificates of deposit was a national bank, bound by law and its own business interests to preserve its financial credit and standing above all suspicion, we have no difficulty in coming to the conclusion that every person hearing that its obligations had been protested for non-payment would naturally infer that the bank was unable to pay its debts. We are therefore of the opinion that the evidence showing that the certificates of deposit had been protested was evidence tending to show the insolvency of the bank.

We will next consider whether or not the refusal of the trial court to allow the questions propounded to the witness E. A. Sherman was error; and the solution of this question depends upon the fact whether the two questions asked the witness, as hereinbefore specified, called for testimony that would tend to show the insolvency of the bank. In the case of *Thompson* v. *Hall*, 45 Barb. 216, there was a question in the court below as to whether one James Thompson, the maker of a note, was insolvent at a certain time. Wright, a witness, stated that he was acquainted with James Thompson's pecuniary circumstances, and had been for several years. The witness then stated numerous facts touching the property of James Thompson, and his indebtedness, showing a full and intimate acquaintance with the insolvent condition of James Thompson. The witness was then asked the direct question: "Was he able to pay his debts in December, 1855, in the usual course of trade?" The answer was: "No, sir; so far as I know, I know he was not." The question was objected to, and objection overruled,

and an exception taken. MARVIN, J., in delivering the opinion
of the supreme court, said: "In my opinion, no error was com-
mitted in receiving this evidence. I do not understand the
question called for the opinion of the witness simply. In form
it called for a fact,—was James able to pay his debts in the usual
course of trade? If the witness knew the fact, there certainly
could be no objection to his stating it." In *Hard* v. *Brown*, 18
Vt. 87, the solvency of one Rood was in issue. BENNETT, J.,
in delivering the opinion of the court, said: "We do not see
that the county court erred in permitting witnesses, who had
a personal acquaintance with Rood, to express their opinion in
regard to his solvency, as derived from a personal acquaintance
with him, and from information derived from others in the
vicinity where he resided, and who were also acquainted with
him. When the question in issue is in regard to the pecuniary
standing of an individual, the matter must necessarily to some
extent rest in opinion. This opinion must be based upon what
the witness knows of the individual himself, and upon the esti-
mate of others who know him. The credit of an individual is
ordinarily, in fact, in a great degree, made up of opinion." In
the case of *Sherman* v. *Blodgett*, 28 Vt. 149, the plaintiff had
sued the defendant as sheriff for having taken insufficient bail
on mesne process. The defendant at the trial, to show that
the bail was sufficient at the time it was taken, called a wit-
ness, who testified that the bail, at the time of the service of the
writ which the bail indorsed, owned certain real estate and per-
sonal property, which he described, and his means of knowing
the then situation and circumstances of the bail. The counsel
for the defendant then asked the witness what, in his opinion,
from his knowledge of the said Ahira, (the bail,) and his affairs,
was the value of said Ahira's property, over and above what he
owed, at the time the defendant served the writ. This question
was objected to, objection overruled, and exception taken. The
supreme court said, in reviewing the case: "We have no doubt
the evidence objected to was properly admitted. The solvency
of an individual is a matter resting somewhat in opinion; and,

in the present case, the witness had stated what property the bail owned at the time he entered bail, and his means of knowing the situation and circumstances of the bail. Certainly there could then be no objection to his giving his opinion from his knowledge of the bail, and of his affairs, what he thought he was worth." In *Potter* v. *Bank*, 28 N. Y. 655, the court of appeals, after stating that the insolvency of the maker of a promissory note may always be shown to lessen the damages in an action of trover for the conversion of promissory notes, says: "It was insisted on the trial that the proper question to put to the witness, in order to arrive at the measure of damages, was, what was the value of the note? and the ground on which the right to put the question rests is that such is the inquiry in all other cases where the value of the property is sought to be recovered. The general rule is that the value of property must be ascertained by answers to the direct questions as to its value; and the reason is that persons are examined who know its value, and can speak from their own personal knowledge in relation thereto. But this rule cannot apply to a chose in action. They have no intrinsic value, as a horse or an acre of land has. Their value depends on the pecuniary condition of the parties liable thereon; and hence, in such cases, the direct and proper inquiry would be, are the parties to a bill or note, or other choses in action, solvent, and able to pay their debts?" Now, what is the case at bar? The witness Sherman had shown by his testimony that he was fully qualified, by reason of his personal knowledge of the affairs of the First National Bank of Sioux Falls, to testify as to whether on the 6th day of March, 1886, said bank was able to pay its debts or not, or, which is the same thing, whether it was solvent or not. He was asked whether the bank was solvent or insolvent in two different ways, and each question was excluded. We think the trial court erred in excluding these questions. The witness had shown such an acquaintance with the financial condition of the bank that he could testify, as a matter of fact, whether the bank could pay its debts or not. But we are told by respondent that there was no error com-

mitted in directing a verdict for the respondent, for the reason that appellants did not show, or offer to show, that the indorser of the certificates, J. B. Young, was insolvent; and, in support of this position, we are referred to the case of *Menkens* v. *Menkens*, 23 Mo. 252. It is undoubtedly true that, in order to show that the certificates of deposit were worth less than their face value, the appellants would be obliged to show that all parties liable thereon to the respondent were not able to pay their debts at the time of the conversion; but, if appellants could not, by all the resources at their command, show the insolvency of the bank, they might well hesitate to go further, in view of the fact that, whatever they should show, as to the insolvency of the other parties liable on the certificates, it would avail them nothing, for the reason that the financial credit of the maker of the certificates would still stand unimpaired.

Judgment reversed. All the justices concurring, except SPENCER, J., not voting.