[File No. 5983.]

FRANK COAN, Respondent, v. PLAZA EQUITY ELEVATOR COMPANY, a Corporation, Appellant.

(239 N. W. 620.)

Opinion filed November 25, 1931.   Rehearing denied December 19, 1931.

*F. F. Wyckoff,* for appellant.

*F. B. Lambert,* for respondent.

BURKE, J.   This is an appeal from an order overruling a motion for a new trial.   The action was brought in December, 1927, and upon trial a verdict was returned for the defendant.   A motion for a new trial was denied and the court's stenographer, who took the testimony at the trial, having died before a transcript of the testimony could be procured, so that an appeal from the judgment might be taken, an action· was commenced in equity to vacate the judgment and grant a new trial upon the ground that the plaintiff had been deprived of his right to appeal.   The district court made findings of fact and conclusions of law favorable to the plaintiff and ordered judgment thereon vacating the former judgment and granting the plaintiff a new trial. On appeal to this court the judgment was duly affirmed.   Coan v. Plaza Equity Elevator Co. 60 N. D. 51, 232 N. W. 298.   On the second trial of the action there was a judgment rendered for the plain-

tiff and the defendant below moved for a new trial, first, on newly discovered evidence, and second, insufficiency of the evidence to justify the verdict. The motion is made upon the records, pleadings, files, the minutes of the court, affidavits and a transcript of the testimony given in a certain action in which L. R. Baird, as receiver of the State Bank of Berthold was plaintiff and Frank Coan, plaintiff herein, et al., were defendants, with all the records and files in said action.

In the instant case the plaintiff sues to recover for the conversion of 1500 bushels of rye and 67 bushels of wheat deposited in defendant's elevator at Plaza, North Dakota, in November, 1924. The records show that on October 30, 1924, Frank Coan, the plaintiff, and W. J. Kielty, deposited in the Plaza Equity Elevator Company, 1402.46 bushels of rye. The warehouse receipt issued therefor is marked "canceled" and upon its face there is written "Reissued ticket 3999." A stub in the elevator warehouse receipt book shows that ticket 3999 was issued to C. S. Stevenson for 1302 bushels and 46 pounds and another warehouse receipt for 100 bushels was issued to Frank Coan, the plaintiff, which appears in evidence as exhibit "E." This warehouse receipt, exhibit "E," for 100 bushels to Frank Coan, was again reissued on April 8, 1925; 81.28 bushels in warehouse receipt No. 589 to Roy Hartgrove and on this warehouse receipt there is written "Settlement against Frank Coan." This warehouse receipt was cashed by Roy Hartgrove on the 8th day of April, 1925 and on the same day, namely, April 8th, 1925, a warehouse receipt No. 588 was issued to Frank Coan for 18.28 bushels of rye, and on the same day, April 8th, 1925, it was cashed by Frank Coan who signed the receipt for the purchase price. Exhibit "E," the warehouse receipt to Frank Coan for 100 bushels of rye, which was split and reissued was not indorsed by Frank Coan although he must have been present at the settlement mentioned in writing on the face of the Hartgrove warehouse receipt, for, at the same time, warehouse receipt No. 588 was issued to Coan and No. 589 to Hartgrove, both cashed and receipted for on the same day. Exhibit "E," the warehouse receipt issued to Coan, at the same time that the ticket for 1302 bushels and 46 pounds was issued to Stevenson, was handled in the same way that plaintiff's exhibit 1, the original canceled receipt, was handled. This exhibit 1 was sent with other papers to the E. Y. Salyards & Company, a commission house in

Duluth, and was stamped "Paid," although receipt for the purchase money was not signed by any one, and exhibit "E," which had been reissued into checks Nos. 588 and 589 was also sent to the commission house and stamped "Paid," although the receipt for the purchase money was not signed by Coan. Mr. Myhre testifies that it was the custom to send all the warehouse receipts down with the other papers to the commission house and have them stamped paid.

Again, the plaintiff seeks to recover for 67 bushels of wheat which he claims he deposited and the defendant converted at said time. At the trial he swore positively that he deposited 67 bushels of wheat; that he made demand for it and the defendant had refused to deliver or to pay for it. The records show that the only wheat he delivered to the defendant in the fall of 1924 was delivered on November 12, 1924, and a warehouse storage receipt was issued to him for 134 bushels and 20 pounds and on the same day the check on the back of the warehouse receipt was filled in by the defendant's agent, Benjamin J. Oliva, who signed the same as buyer of the wheat and the plaintiff, Frank Coan, signed the receipt for the purchase money in full payment for said wheat.

It is the contention of the defendant that Stevenson, who was president of the Berthold bank, was authorized by the plaintiff to sell the grain. Mr. Oliva, the agent, when asked what method was employed with reference to the issuing of storage tickets on the sale of grain testified: "Approximately the same procedure was followed" (each year.) "The grain was delivered and after all was in the possession of the elevator, Mr. Stevenson would sell the grain with the exception probably of a few loads that Mr. Coan would sell on permission from Mr. Stevenson to pay incidental expenses." This seems very reasonable as the record shows that Stevenson's bank held mortgages on the crop every year and ordinarily the elevator company would not issue and deliver to the mortgagor negotiable warehouse storage tickets for grain upon which there was a mortgage and it is corroborated by Mr. Coan on page 12 of the transcript of the record in the case of Baird, Receiver v. Coan et al. Mr. Coan is asked if he sold the crops in 1924 and turned the money over to Mr. Stevenson. He testified: "I didn't sell any crops at all only enough for expenses." On page 6 of the same record when asked about the crop in 1922 he stated: "I gave him the

crop that fall, or gave him something like four hundred dollars in the fall he got, and I gave him some in the spring of 1923. Four hundred twenty-four dollars I think it was in the fall of 1922 and in the spring of 1923, nine hundred and thirty-eight dollars. It was from the 1922 crop." On page 8 of this record he is asked how much he owed the bank. "Well, I knew that I was up to about four thousand dollars. . . . Charley said I was getting up somewhere in there and then I commenced to pay it off. So I thought it would get down some lower." Again on page 12 of this transcript, he is asked: Q. "And he (meaning Stevenson) never took any crop under any mortgage from you, did he? A. No, I always gave it to him." On page 6 of the transcript in the record of Baird, Receiver v. Coan, et al., he is asked in reference to the note dated February 6, 1924, and stated: "Well I must have. I didn't know that I signed such a note as that but I must have signed it . . . at Stevenson's bank."

Q. "Did you at the time you signed that note receive anything from either Mr. Stevenson or the bank?

A. "No.

The Court: "Why did you sign it?

A. "Why he wanted me to sign it. I was signing some notes there and he wanted to make a renewal and he said they were small notes and I never looked at them.

Q. "Do you never look at them?

A. "No, I dont.

Q. "You are in the habit of doing that?

A. "Well with him whenever he asked me to sign anything I did.

Q. "That was your habit?

A. "With him it was.

Mr. Funke: Q. "How long had you been dealing with Mr. Stevenson?

A. "About twenty years.

Q. "And you always dealt with him in that way?

A. "Yes, whatever he said I thought was law."

This testimony was given on March 25, 1926, nearly two years after the alleged conversion. During all of the twenty years that the plaintiff had been dealing with Mr. Stevenson and the Berthold bank there

never had been any controversy of any kind. None of the business dealings between Mr. Stevenson and Mr. Coan or Mr. Stevenson's bank and Mr. Coan had ever been questioned. He signed every note or mortgage that he was requested to sign even without reading them. No claim was ever made by Mr. Coan against Mr. Stevenson or his bank for the grain which he claims was sold by Mr. Stevenson in the fall of 1924 and which the defendant claims was sold just as all the other crops had been sold and handled for years. Mr. Stevenson's bank failed shortly after the sale of the rye in 1924, but no action was brought against the elevator company until December, 1927, three years after the alleged conversion. It clearly appears from the record that the defendant acted promptly after learning of the testimony given by Coan in the case of Baird v. Coan et al.

It is the contention of the appellant that the plaintiff, Coan, in the instant case testified he never had any conversation or agreement with Stevenson in reference to the selling of the grain. In the instant case the plaintiff testified as follows:

Q. "Did you tell Mr. Stevenson that when he thought the price was right to go down and sell the grain?

A. "I did not.

Q. "And apply it on your notes? You didn't tell him that?

A. "I did not.

Q. "Did you tell Mr. Oliva?

A. "I did not."

Q. "You had been in the habit of signing what ever he told you to sign?

A. "Well generally, yes, sir.

Q. "You trusted Mr. Stevenson?

A. "Yes sir.

Q. "Trusted him for years?

A. "Yes, sir.

Q. "Trusted him to sell your grain?

A. "I did not.

Q. "He never sold any grain for you?

A. "Might have sold some when I ordered him to but never before. . . . A couple of times I told him to sell some grain.

Q. "To apply on your indebtedness?

A. "I don't know as to that, I told him to sell."

Q. "You said a while ago, did you not, you had him sell your grain a number of times?

A. "I didn't. I said a couple of times.

Q. One of those times was when you didn't owe him?

A. "Yes, sir.

Q. "The other time was when you did owe him?

A. "Yes I think so.

Q. "That one time you did owe him was the year 1924?

A. "I dont know as I owed him one dollar then.

Q. "You didn't know whether in 1924 or not?

A. "Yes I do.

Q. "You did tell him to sell your grain and apply on your indebtedness?

A. "I did not.

Q. "Didn't you?

A. "Not in 1924, I didn't."

On Page 88 of the transcript in the instant case he is asked by his own counsel:

Q. "Now did you owe the Bank of Berthold anything at that time?

. . .

A. "Well I really didn't owe them anything. I didn't really owe them anything without some little bills, some little money that I got that wasn't—it wasn't very much.

Q. "How much would it be, two or three hundred dollars?

A. "Oh yes couple of hundred dollars anyhow. . . . In the spring of 1916 I owed them $1,000. . . .

Q. "Did you ever tell Stevenson to come down to the elevator in 1924 and collect for this grain?

A. "I did not.

Q. "Did you ever give him that ticket, Exhibit 1?

A. "I did not.

Q. "Did you ever at any time consent to that payment being made to Stevenson?

A. "I did not."

His testimony in the Baird, Receiver v. Coan et al. case, in reference to the transaction of February 6, 1924, is as follows:

Q. "I show you exhibit 10 and ask you to state whether or not that is your signature?

A. "Yes, that's my signature on exhibit 10.

Q. "Now that covers the settlement you had in February, 1924? Does it not?

A. "Well I dont know anything about that there. I supposed I signed all that but I dont say I got all that money. . . . The crop in 1922 was flax. He sold it. The way it was the Union National Bank had half of it and he had half of it. . . ."

Q. "You gave a mortgage on the crops of 1924 in February, 1924, didn't you?

A. "Well now was all them notes—when were they all signed?

Q. "Did Mr. Stevenson in the fall of 1922 claim a crop mortgage on your crops?

A. "Why he had a mortgage, yes, he claimed it.

Q. "And did he have a mortgage on your crop of 1923?

A. "Well there was nothing there.

Q. "He had a mortgage to secure $1,500 on crop of 1924?

A. "I suppose he did.

Q. "In the fall of 1924 did Mr. Stevenson get any money out of your 1924 crop?

A. "Well I guess he did. He got I dont know how much he got. There was grain there in the elevator and that grain he got it. I dont know. . . .

Q. "Now Mr. Coan, did you sell this grain and turn the money over to Mr. Stevenson in 1924?

A. "No, sir, I did not.

Q. "Did you ever authorize Mr. Stevenson to get this money outside of what rights there were under the mortgage?

A. "If you want me to tell what bargain we had I will—

Q. "Go right ahead and tell the whole thing.

A. "That is about the crop of 1924?

Q. "Yes.

A. "Well Mr. Stevenson and me settled at the Berthold Bank and I was to pay him $1,200 and I was to phone up there and he was to

come down and sell the grain and I was to give him $1,200 and I was to get the rest—and I supposed he had all these notes and that was the bargain we made.

Q. "Well, Mr. Coan, was Mr. Stevenson claiming that crop, on account of having a mortgage on it?

A. "Well I knew somebody had a mortgage on it but I supposed all these notes come to the state bank and I would settle the whole thing, that is what I supposed. . . .

Q. "Did you have any agreement as to how Mr. Stevenson was to apply this money?

A. "No, there wasn't. I suppose though that first would be that seed lien and the rest I suppose he had the dealings. . . .

Q. "Did you ever tell Mr. Stevenson he could apply this crop on any notes not secured by mortgage?

A. "I never told him nothing. I just told him I would settle for that and that is all there was to it.

Q. "Well you knew he had mortgages on the crop, didn't you?

A. "Well, yes, I knew he had mortgages on the crop."

At the time of the trial of the instant case Mr. Stevenson was not a witness as he had died some time previously. But other witnesses testified in substance that at the former trial Stevenson testified that he had authority from the plaintiff, Coan, to sell the grain. Oliva, agent, and Peter Myhre, also testified to several conversations with Coan in which he said that Stevenson was authorized to sell the grain. It also appears that within a few minutes after the sale of the rye by Stevenson, Coan appeared at the elevator—all of the witnesses so testify—and that Oliva told Coan that Stevenson had sold the rye. It is also undisputed that at that time Oliva said to Coan, if you are not satisfied I can stop payment on the check. There is a dispute, however, as to what Coan said. Oliva said that Coan said it was all right and Myhre said that Coan said he ought to have sold it all. Coan and Harrison say that Coan said: "I dont care what you do I want my grain or I want the money." Harrison testifies that this took place within fifteen minutes from the time that the sale was made and if his and Coan's testimony is true it would seem that the elevator company would stop payment on the check.

The pleadings in the case of Baird, Receiver v. Coan, et al., are

not a part of the record in the instant case but Coan appeared and defended by attorney and it is apparent from his testimony that his defense was that his indebtedness to the Stevenson bank had been paid by the crops raised by him in 1922, 1923 and 1924. He testified: "I was to give him $1,200 . . . I supposed he had all those notes and that was the bargain we made. . . . I supposed all those notes came to the state bank and I would settle the whole thing. There wasn't an agreement as to how the money was to be applied. I suppose though that first would be the seed lien and the rest, I just told him I would settle for that and that is all there was to it." On the 20th of February, 1924, Coan gave a mortgage to the State Bank of Berthold on the 1924 crop to secure the payment of one note for $1,500 dated February 6, 1922 and on the same date a mortgage on the same crop to secure the payment of a note for $2,200 dated February 6, 1922.

The findings of fact in the case of Baird, Receiver v. Coan et al., describes the notes and finds that in the fall of 1924 the State Bank of Berthold received $1,600 for the crop of 1924 and a total sum of $3,100 from the crops covered by mortgages for the years 1922, 1923 and 1924; that defendant, Frank Coan, and the defendant, First State Bank of Ashby, were entitled to have said moneys applied in payment and satisfaction of said note.

As conclusions of law the court found that the plaintiff, Baird, had nothing due upon the $1,500 note; that the same was fully paid, and there was $2,500 due on the other note. According to these findings the defendant has been allowed on his indebtedness to the State Bank of Berthold full payment for the crops of 1924. The findings and conclusions are based largely on his testimony and he and Baird, Receiver, are bound by the judgment. By the judgment he is allowed $1,600 on his indebtedness to the bank for the crop of 1924, but since the matter is only before us on a motion for a new trial we can only grant the motion.

The order overruling the motion for a new trial is reversed and a new trial is ordered.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE and BURR, JJ., concur.

## On Petition for Rehearing.

BURKE, J. The motion for a new trial on the grounds of newly discovered evidence was based upon evidence and the files ·in the case of Baird v. Coan, et al., and the petition for rehearing states that Coan does not plead payment in said case.

Since writing the opinion in the instant case, the pleadings in said case have been transmitted to this court, and it appears Coan answered, denying that he ever gave the notes and mortgages involved in said case and that if he did give them they were without consideration.

The State Bank of Ashby, one of the defendants in said case, in its answer, specifically alleges that the chattel mortgage set forth in plaintiff's first cause of action and the notes secured thereby were fully paid by the defendant, Frank Coan, by delivering to the State Bank of Berthold the crop covered by said mortgages for the years 1922, 1923 and 1924 and it is specifically alleged that the 1924 crop amounted to approximately sixteen hundred dollars ($1,600). So the question of payment by Coan was in issue in said action. Coan testified that Stevenson got the 1924 crop; that Stevenson had a mortgage on said crop; Stevenson testified that he took the crop and credited Coan, not on the mortgage indebtedness, but on his indebtedness that was not secured by mortgage, and by a credit deposit of the balance in the bank.

The court held as a conclusion of law that the value of the crop which he found to be sixteen hundred dollars ($1,600) should be and was by the judgment credited on the mortgage indebtedness and that the note, which the mortgage secured, was held to be fully paid.

It is well settled that the owner of the property that has been converted by another can only recover his actual loss and facts which will go towards a mitigation of damages, are competent evidence in a trial of an action in conversion. Stone v. Chicago, M. & St. P. R. Co. 3 S. D. 330, 53 N. W. 189; Huether v. McCaull-Dinsmore Co. 52 N. D. 721, 204 N. W. 614; Northrup v. Cross, 2 N. D. 433, 51 N. W. 718; First Nat. Bank v. Dickson, 5 Dak. 286, 40 N. W. 351; Rapid Machine Works v. Silberstein, 136 Misc. 837, 241 N. Y. Supp. 68; Sutherland, Damages, § 156, p. 399; 9 N. D. 636.

· The petition assumes that the judgment ·in the case of Baird v. Coan is held to conclude the plaintiff in the instant case, but we do not so

hold. The question of res adjudicata is not involved at all. The judgment in the case of Baird v. Coan, like every other judgment, is binding only on the parties and their privies. But from the showing made on the motion for a new trial on the ground of newly discovered evidence it appears that there is evidential matter in the record in the Baird case, which is material to the defense in the instant case and the petition is denied.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE and BURR, JJ., concur.