[File No. 6125.]

FRANK COAN, Respondent, v. PLAZA EQUITY ELEVATOR COMPANY, a Corporation, Appellant,

and

STATE OF NORTH DAKOTA EX REL. FRANK COAN, for the Use and Benefit of Said Frank Coan and All Others Similarly Situated, Respondent, v. PLAZA EQUITY ELEVATOR COMPANY, a Corporation, and Hartford Accident and Indemnity Company, a Foreign Corporation.

(249 N. W. 104.)

Opinion filed May 13, 1933.

*F. F. Wyckoff,* for appellant.
*F. B. Lambert,* for respondent.

BIRDZELL, J. This is an action in conversion. It was instituted in December, 1927, and is predicated upon the alleged conversion of a crop grown by the plaintiff in 1924 and stored with the defendant in November of that year. The crop was sold by Stevenson, president of

the State Bank of Berthold, in December, 1924, and the proceeds were paid to him by the defendant. The case has been tried three times. Upon the first trial there was a judgment for the defendant and upon the second and third trials the plaintiff recovered judgment. A new trial was awarded in an action after the first trial on account of the death of the court reporter and the consequent inability to secure a record for review on appeal. Coan v. Plaza Equity Elevator Co. 60 N. D. 51, 232 N. W. 298. A new trial was awarded upon appeal after the second trial on the ground of newly discovered evidence. Coan v. Plaza Equity Elevator Co. 61 N. D. 627, 239 N. W. 620. This consisted of testimony given by the plaintiff in another action, wherein the receiver of the State Bank of Berthold was attempting to foreclose a mortgage securing certain notes executed by Coan, which testimony tended to show that Coan's 1924 crop was sold by Stevenson pursuant to an understanding that the proceeds were to be credited, and that they were so credited, on his obligations at the bank. On the third trial the plaintiff's testimony in the action by the receiver against him was shown and the questions arising thereon were submitted to the jury under instructions of the court. The jury found the issues for the plaintiff, and rendered a verdict in his favor for $1,517.05, with interest at 6 per cent from December 10, 1924. Thereafter the defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial, which motion was denied. The instant appeal is from the order denying the motion and from the judgment which was entered upon the verdict of the jury. It is not necessary to restate all the facts which were stated on the last appeal to this court (61 N. D. 627), nor to state additional facts, except as the same become material to questions presented on this appeal.

At the beginning of the trial the plaintiff, pursuant to notice previously given, moved the consolidation of this action with another brought on the warehouseman's bond which was pending in the same court. The action on the bond was entitled in the name of the State of North Dakota, ex rel. Frank Coan, for the use and benefit of said Frank Coan and all others similarly situated, plaintiff, versus Plaza Equity Elevator Company, a corporation, and Hartford Accident and Indemnity Company, a foreign corporation, defendants. Counsel for the indemnity company announced that they stood on the record made

in connection with the ruling of the trial court consolidating the actions. At the conclusion of the trial a judgment was rendered against the indemnity company, as well as against the Plaza Equity Elevator Company; and a separate appeal is taken by the indemnity company which is considered in a separate opinion.

Counsel for the appellant in this action objected to the consolidation and demanded a separate trial. Upon this appeal error is predicated upon the ruling of the trial court, which permitted the consolidation, and the claim is made that the defense was jeopardized and prejudiced on account of the fact appearing that a bond company was interested as a defendant. It is argued that the statute, § 7965 of the Compiled Laws of 1913, does not authorize consolidation of the two actions and that it was prejudicial error as regards the elevator company to permit consolidation.

It is true that § 7965 does not authorize consolidation of actions where the parties are not identical. The section reads: "When two or more actions are pending at one time between the same parties and in the same court upon causes of action which might have been joined, the court may order the actions to be consolidated."

In these actions the parties are not the same. The instant action is by Coan, plaintiff, against Plaza Equity Elevator Company, defendant. In the action upon the bond, Coan is merely one of the use plaintiffs, the legal plaintiff being the State of North Dakota, and in the bond action there are two defendants, the elevator company and the indemnity company.

It does appear, however, that the causes of action in the two suits are causes that might have been joined. Section 7466, Comp. Laws 1913, provides: "The plaintiff may unite in the same complaint several causes of action, whether they are such as have been heretofore denominated legal or equitable, or both, where they all arise out of: (1) The same transaction, or transactions connected with the same subject of action; . . ."

The plaintiff's cause of action in the instant suit arises out of the alleged failure of the defendant to discharge its duties as a warehouseman. While this failure is charged in the complaint to constitute a conversion of the plaintiff's property, the facts relied upon to establish the conversion likewise establish a breach of duty for which the ware-

houseman's bondsman is liable under the following terms of the bond: "Now, therefore, if the said Plaza Equity Elevator Company shall faithfully discharge and perform its duties as such public warehouseman and comply with all the laws of the State of North Dakota relative thereto and the rules and regulations adopted by the Board of Railroad Commissioners or Supervisor of Grades, Weights and Measures of said state in connection therewith, and shall pay for all grain purchased, and all sums for which said principal shall become liable to the holders of warehouse reecipts, then this obligation to become null and void, otherwise to remain in full force and effect."

Clearly, the plaintiff could unite in one complaint a cause of action against the Plaza Equity Elevator Company for conversion of grain received by it as a warehouseman and a cause of action for breach of its obligation on the bond (Pom. Code Rem. 5th ed. §§ 357 to 370, inclusive, more specifically § 370) ; and, inasmuch as a warehouseman's bondsman is necessarily interested adversely to the plaintiff in any controversy in which it is sought to establish a liability upon the part of the warehouseman for which the bondsman may be answerable, such bondsman may be properly joined as a defendant. Comp. Laws 1913, § 7404. See Hanson v. Menoken Farmers Co-op. Asso. 52 N. D. 126, 202 N. W. 135 ; Moore v. Smith & Marshall, 10 How. Pr. 361 ; New York Jobbing House v. Sterling F. Ins. Co. 54 Utah, 394, 182 Pac. 361. In other words, had the plaintiff begun one action instead of two, alleging in his complaint facts which if proven would establish liability upon the part of the warehouseman and the bondsman, he might properly have joined the bondsman as a party defendant. The situation is somewhat analogous to that which results from automobile liability insurance under statutes existing in some of the states. See Burkhart v. Burkhart, 200 Wis. 628, 229 N. W. 34 ; 2 Blashfield, Cyclopedia of Automobile Law, § 14, page 1519, where the principle is stated as follows: "Under some statutes relating to transportation of passengers by motor vehicle, there are express provisions to the effect that any person injured by the negligent act of the operator of such a vehicle shall have a direct cause of action against the owner or operator, and the surety in the indemnifying bond which the statute requires such owner or operator to give, and, even in the absence of such an express provision, under a Code provision that a plaintiff may unite several

causes in the same complaint, when they all arise out of the same transaction and affect all the parties to the action, a statute requiring passenger carriers by motor vehicle to take out insurance to cover injuries to persons or property, caused by the negligence of the carrier in operating such vehicle, may be construed in connection with other provisions as providing that one direct action shall be maintained against both the carrier and its surety, whether the action be by a passenger, or by some other traveler injured in a collision with the insured." Citing American Auto. Ins. Co. v. Struwe (Tex. Civ. App.) 218 S. W. 534; Devoto v. United Auto Transp. Co. 128 Wash. 604, 223 Pac. 1050, 130 Wash. 707, 226 Pac. 1118; Hayes v. Staples, 129 Wash. 436, 225 Pac. 417.

Warehousemen are required to qualify by furnishing bonds which must be filed in the office of the board of railroad commissioners. Everyone, then, is charged with knowledge of the fact that bondsmen are answerable for breaches of duty on the part of warehousemen. Hence, even though the actions in the instant case were not properly consolidated, we are of the opinion that the error, if any, cannot be deemed prejudicial.

It is next contended the evidence shows beyond dispute that Stevenson acted as the agent of Coan in selling the grain involved in this action. It is true there is abundant evidence to support this claim of agency, but, on the other hand, there is evidence pointing to the conclusion that he was not authorized to sell it. Coan testified as follows regarding a conversation he had with the elevator agent on the day the grain was sold:

"Q. What was that conversation? A. Well, he said that Stevenson had come down and sold that grain.

"Q. The rye? A. The rye and wheat.

"Q. What did you say? . . . A. I can't exactly repeat the very words I said, but I told him I wanted my grain, that's what I wanted.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. Did he give it to you? A. No, he didn't.

"Q. Did he give you pay for it? A. No, he didn't give me nothing.

"Q. Did he tell you what he had done with the grain, the rye and wheat? A. He said Charlie Stevenson had sold it; and had got the

money, I suppose. He sold the grain, that's what he said. He didn't say whether he got the money, but he said he sold the grain.

"Q. What did Mr. Oliva say about having issued a check for it? A. Well, I can't remember the very words he said, but the way he talked, he thought it was all right anyway, that Stevenson had a right to sell the grain.

"Q. He refused to pay for it to you? A. Yes, he refused to pay for it to me."

Testifying in rebuttal concerning the evidence given by Oliva with reference to a proposal to stop payment on a check given to Stevenson for the grain, Coan testified:

"He said something about stopping checks. I didn't pay any attention to that. I told him I didn't care anything about checks. I wanted my money for the grain."

He further testified that he had had a settlement with Stevenson at the Berthold bank, whereby it was agreed that he (Coan) would sell the grain down there (Plaza) "and settle with him, pay him $1200, if I could get all my notes back."

"Q. And your mortgages? A. My mortgages and notes.

"Q. What else did you say about him coming down there? A. I told him he could come down there, and I would sell the grain and pay him $1200, providing I could get my notes and mortgages and everything.

"Q. Did you tell him to sell it? A. No sir, I said I would sell it.

"Q. Did you say anything about when you would meet him? A. No, there was nothing said. I think, if I remember right, I was going to telephone to him, or something of that kind.

"Q. Did you telephone him? A. No, I never did.

"Q. Did you meet him at : : . Plaza? A. No, I didn't see him at all.

"Q. Did you get your notes back? A. No, I didn't get nothing."

The testimony that Coan gave in the case of Baird, Receiver, v. Coan, et al., and on account of the discovery of which the second new trial was awarded in this action (61 N. D. 627, 239 N. W. 620), was intro-

duced in this case, and appellants rely particularly upon the following as establishing Stevenson's agency:

"Q. Go right ahead and tell the whole thing. A. That is about the crop of 1924?

"Q. Yes. A. Well, Mr. Stevenson and me settled at the Berthold bank and I was to pay him $1200, and I was to phone up there, and he was to come down and sell the grain, and I was to give him $1200, and I was to get the rest; and I supposed he had all these notes. And that was the bargain we made."

We are of the opinion that the testimony given by Coan in the Baird case and in the instant case is consistent, and it may be reasonably interpreted to the effect that Coan did not authorize Stevenson to sell the grain; that he was to sell it himself and out of the proceeds to pay over $1,200 to Stevenson in settlement of his obligations at the State Bank of Berthold, Stevenson agreeing to surrender the notes. The testimony further shows that this understanding was not carried out. Hence, there was clearly a question of fact as to whether Stevenson was authorized to sell the grain. The jury having resolved this in the respondent's favor, we cannot disturb the verdict.

It is also contended that the record shows indisputably that Coan has received credit for this grain to the extent of $1,000 which was credited upon a note of $1,180 held by the State Bank of Berthold. It is true that the testimony of the bank receiver's agent, to the effect that the $1,000 of proceeds of this grain was so credited, is undisputed, but under the testimony it does not appear beyond dispute that such credit was authorized by the plaintiff.

It is next contended that Coan received credit for the proceeds of this grain in the judgment entered in the case of Baird, Receiver, v. Coan, et al. The judgment roll in that case is now an exhibit here and upon careful examination we find that it does not necessarily bear out certain inferences of fact which we felt might have been drawn from such parts of the record as were before us upon the motion for a new trial. (61 N. D. 627.) There we said that according to the findings the defendant had been "allowed on his indebtedness to the State Bank of Berthold full payment for the crops of 1924." Of course, if it appeared that as a result of his testimony in that action he was allowed such credit on his indebtedness he could not recover again in this

action. Daniels v. Smith, 15 Ill. App. 339; Terry v. Munger, 121 N. Y. 161, 24 N. E. 272, 8 L.R.A. 216, 18 Am. St. Rep. 803; 2 Freeman, Judgm. 5th ed. § 576; 26 R. C. L. 1142.

However, it now appears that Coan in that action did not plead payment or part payment of his indebtedness to the bank and that he gave testimony from which it would appear that he was questioning much of the alleged indebtedness. That suit was instituted as a foreclosure suit to foreclose a mortgage on machinery and livestock, and the issues were primarily between the State Bank of Berthold and the State Bank of Ashby, Minnesota, and involved principally a question of priority. The findings are that the Berthold bank had received certain proceeds of the 1922, 1923 and 1924 crops amounting to $3,100, and the chattel mortgage held by the Berthold bank to secure a $1,500 note, which was filed prior to a similar mortgage given to secure a note held by the Ashby bank, was held to be discharged and the Ashby bank was given priority. But since the findings further show that the money received from the 1922 and 1923 crops was substantially sufficient to have discharged the first mortgage to the Berthold bank, it does not appear that Coan actually received credit in that action for the proceeds of the 1924 crop. It is significant in this connection that while the Berthold bank was given a second lien on the chattels by virtue of another note and mortgage of $2,500, due October 1, 1924, the conclusions of law do not credit Coan with any surplus received by the Berthold bank out of the 1924 crop over and above what was necessary to fully discharge the prior $1,500 note, although the findings show that altogether $3,100 was received.

The judgment and order appealed from are affirmed.

NUESSLE, Ch. J., and BURKE, CHRISTIANSON and BURR, JJ., concur.