## KELLY v. LANG et al.

No. 7366.

Supreme Court of North Dakota.

Aug. 18, 1953.
On Rehearing March 1, 1954.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, with Myers & Snerly, Chicago, Ill., for appellant.

Duffy & Haugland, Devils Lake, for respondent.

GRIMSON, Judge.

This is a suit for the alleged conversion of 39 feeder lambs. There is very little conflict in the evidence. The plaintiff and Clarence and Francis Longie entered into an agreement in the fall of 1949 for the raising of sheep on shares. The Longies and plaintiff each owned one-half of the sheep and were to share equally in the proceeds of sale of wool and sheep. To raise their share of the purchase price the Longies mortgaged their one-half interest in the sheep together with some other property they owned to the Northern Investment Corporation of North Dakota of which Kelly was an officer and in which he was financially interested. At different subsequent times, when the Longies needed cash, advances were made to them by the Northern Investment Corporation of North Dakota. Such advances were included in the renewal mortgages. These mortgages were duly filed with the Register of Deeds of Benson County where the sheep ranch was located and where the Longies lived. Clarence Longie withdrew from the enterprise in 1950 after which it was carried on by his wife, Francis Longie. She afterwards renewed the mortgage. Sales of wool and sheep were made in the names of Kelly & Longie and the proceeds divided one-half to Kelly as owner of an undivided one-half interest and one-half to the Northern Investment Corporation of North Dakota to apply on the Longie mortgages.

On Oct. 5, 1951, the defendant, Weiller & Weiller Company, accepted and sold a consignment of the sheep of the joint enterprise and issued a check in payment thereof to Kelly & Longie in accordance with their agreement. On Dec. 3, 1951, Mrs. Longie engaged the defendant, Fred Lang, who defaults, to truck 39 feeder lambs of the joint enterprise to the stockyards at Fargo, North Dakota, where the lambs were consigned to, and on Dec. 4th sold by the defendant, Weiller & Weiller Company and net payment of $787.40 was made to Francis Longie. Except as inference might be drawn from the previous sale and the constructive notice of the mortgages as filed, the defendant company had no knowledge of Mrs. Longie's defective title. When the plaintiff learned of this last sale he notified the defendant, Weiller & Weiller Company of his interest in the lambs and made demand upon it for said lambs which was refused. It further appears that at the time of this shipment and sale of the 39 lambs there were at least 44 lambs of the same kind as those sold left on the ranch.

Defendant company made motions both at the close of the plaintiff's testimony and at the close of the case for a dismissal and for a directed verdict on the grounds that the evidence showed defendant company was a marketing agency immune from liability; that the evidence showed a waiver of any lien made under the mortgage and that Mrs. Longie was an agent of plaintiff in making the sale. The motions were denied.

The plaintiff also, at the close of the case made a motion for a directed verdict in favor of the plaintiff which was denied. Thereupon, instead of submitting the case to the jury for a general verdict the court submitted only the following questions to determine the disputed facts:

"No. 1, What was the unpaid balance on the note, Exhibit 3, on Dec. 4, 1951? The jury answered '$3751.35.'

"No. 2, What was the value of the remaining property described in the mortgage, Exhibit 1, on Dec. 15, 1951? The jury answered '$4156.50.'

"No. 3, Did the plaintiff, D. W. Kelly, constitute Francis Longie his agent with authority to sell sheep in their joint names? The jury answered, 'Yes.'

"No. 4, Did the plaintiff, D. W. Kelly, constitute Francis Longie his agent to sell the sheep sold to Weiller & Weiller Company on Dec. 4, 1951 in her name? The jury answered, 'No.'"

Based upon these answers the court ordered judgment for the plaintiff for $401.49, damages and interest for plaintiff's undivided one-half interest in the sheep

and $29.65 costs, amounting in all to $431.14. Thereafter defendant made motions to set aside the Order for Judgment in favor of the plaintiff and for an Order for Judgment for the defendant for a dismissal of the action, which motions were denied.

The defendant appeals from the judgment and from the orders denying his motion to set aside the Order for Judgment in favor of the plaintiff and his motion for judgment of dismissal on the special verdict.

As specifications of error defendant alleges error in the denial of his motions before and after verdict and the insufficiency of the evidence to support the decision of the court.

The defendant, Weiller & Weiller Company's first contention is that it is a marketing agency licensed and operating under the federal law; that under said law and the federal regulations it is required to serve all comers and does not have the opportunity to examine the title of the consignor; that it had no knowledge at that time of any defect in Mrs. Longie's title. On these grounds it is claimed that said defendant is immune from liability for conversion of the property passing through its hands.

■ That question has been before the courts on numerous occasions. The rule at common law was that a factor or commission merchant who receives property from the consignor and sells it under his instructions and pays him the proceeds is guilty of conversion if the consignor had no right to sell the property even though he acted in ignorance of the consignor's want of title.

■■ The question is whether the Federal Packers & Stockyards Act of 1921, 7 U.S.C.A. § 181 et seq., which makes it the duty of the marketing agency to furnish, upon reasonable request without discrimination, reasonable stockyard services, operates to relieve such agencies from the common law rule of liability. The rule

adopted by the majority of the courts is that it does not. See Anno. 2 A.L.R.2d 124 and cases cited.

In Mason City Production Credit Association v. Sig Ellingson and Company, 205 Minn. 537, 286 N.W. 713, 717, the liability of the marketing agency was sustained and it is further held that the "Packers and Stockyards Act was not intended to and does not disturb or supersede local or state law in respect to chattel mortgages". The Supreme Court of the United States twice denied the petitions for a writ of certiorari in that case. That case has been followed in First National Bank of Pipestone v. Siman, 67 S.D. 118, 289 N.W. 416, and Moderie v. Schmidt, 6 Wash.2d 592, 108 P.2d 331. See also Citizens State Bank of Dalhart v. Farmers Union Livestock Cooperative Co., 165 Kan. 96, 193 P.2d 636; Birmingham v. Rice Bros., 238 Iowa 410, 26 N.W.2d 39, 2 A.L.R.2d 1108. This decision is also in harmony with the holdings of this court in cases involving marketing agencies engaged in interstate commerce. See Kastner v. Andrews, 49 N.D. 1059, 194 N.W. 824; Carson State Bank v. Grant Grain Co., 50 N.D. 558, 197 N.W. 146; Hovland v. Farmers Union Elevator Co., 67 N.D. 71, 269 N.W. 842.

■■ Defendant next contends that the lambs were severable property and that either co-owner could separate his share of the lambs without the consent of the other as long as he did not take to exceed the one-half rightfully belonging to him.

"The general rule of common law is that property held in common can be divided only by the consent of the owners or by a proceeding in a court of equity; and it appears that this rule still prevails where the common property embraces several things of different warrants and values, or consists of but a single object that cannot be divided without destroying its character or identity. But where personal property is severable in its nature and common bulk and of the same quality each tenant may sever and appropriate his share, if it can be determined by

measurement or weight, without the consent of the others." 14 Am.Jur. Co-tenancy, Sec. 22, p. 92.

The question is whether spring lambs come within the exception to the rule to the extent of saying that they are so alike that they could be easily divided by count. In the case of Deutscher v. Broadhurst, 69 S.D. 554, 12 N.W.2d 807, it was held they were not. In that case the court held that the lambs were common property of the co-owners and that each of them owned an undivided one-half interest in each and every one of the lambs and that the counting of them without any mention or attempt at separation did not vest sole title in either one to any of the lambs. In the instant case there were 83 lambs. Mathematically they could not be separated and divided equally by any method of separation. At least one would have to be held in joint ownership. While the testimony shows that these lambs were much alike yet there necessarily is some difference. There is usually some difference in their ages. There may be difference in their condition owing to health or development. The testimony shows that these lambs were to be sold when in proper condition yet they were sold in small bunches indicating that they were not all in condition at the same time. We hold that in this case the lambs were not separable and one co-owner had no right to count out and sell any of them without authority from the other co-owner.

■ Defendant claims that the evidence shows that Mrs. Longie was really the agent of the plaintiff in making the sales of their common property. We cannot find any evidence to sustain that. The fact that she did have authority to sell the common property in their joint names does not constitute authority to sell any of it in her own name. The jury found as a matter of fact that she did not have such authority. The arrangement between them as shown by the evidence made them joint adventurers in this sheep enterprise.

"A party to a joint adventure has no right to dispose of the property of the adventure, or at any rate, of his co-adventurers' interest therein, to a third person, without the consent of his co-adventurers." 30 Am.Jur., Joint Adventures, Sec. 43, p. 700.

Clearly one joint adventurer may not appropriate the joint property, or deprive his co-adventurers of the benefit thereof. See Anno. 62 A.L.R. 23.

Defendant company claims that plaintiff's damages are fully mitigated, and cites the special verdict of the jury. The jury found that on Dec. 4, 1951 the balance due on Mrs. Longie's note to the corporation was $3751.35 and that the value of the remaining property described in the mortgage on Dec. 15, 1951 was $4156.50. That would leave an excess value of the remaining property over the mortgage debt of $405.15. That there was property of that value remaining, the defendant company claims would not only mitigate plaintiff's damages because of the sale of the mortgaged half interest in the 39 lambs but also offset the damages caused plaintiff by the sale of his undivided half interest in those lambs.

■ It appears according to the valuations of the jury that there was sufficient of the property included in the mortgage remaining so that the mortgagee and its assignee could recover out of that property a sufficient amount to pay up the mortgage without considering the 49 lambs. That fact could properly be claimed by the defendant company in mitigation of the damages caused by the sale of the mortgaged half of the property. In Coan v. Plaza Equity Elevator Company, 61 N.D. 627, 239 N.W. 620, 624, this court said:

"It is well settled that the owner of the property that has been converted by another can only recover his actual loss, and facts which would go to mitigation of damages are competent evidence on the trial of an action in conversion." (Citing cases.)

On the strength of that evidence the district court held and the plaintiff concedes that plaintiff's damages on account of the sale of the mortgaged half interest in the lambs were mitigated. That reduced the

damages that plaintiff claims by one-half and left his claim of damages for the sale only of his undivided half interest in the lambs which was the amount for which the court allowed plaintiff judgment.

The defendant company claims that the valuation over the mortgage debt of $405.15 would offset plaintiff's damages on account of the sale of his half interest in the lambs and that the plaintiff by his actions so applied the property and waived any objections to the sale; that he in effect ratified the sale so that he is now estopped from making any claim against the defendant company for any damages. It claims that plaintiff did this by taking absolute possession of all of the property as his own.

Before the making of this sale a report of Mrs. Longie, dated 8–6–51, disclosed that "There existed a shortage of 38 ewes in the flock owned by D. W. Kelly and myself." Mrs. Longie, according to the agreement was liable for all losses above 3 per cent. She admitted that this loss seriously impaired her loan and gave a new "On demand" note and mortgage covering all of her property, including her undivided one-half interest in the sheep. She also writes to the Northern Investment Corporation of North Dakota "and/or" D. W. Kelly:

"I further place with you a bill of sale to all my property and hereby irrevocably authorize you, the Northern Inv. Corp. of N. Dak., to accept, at any time you see fit, a sum of money that will pay my loan in full. When this sum is paid by D. W. Kelly or any party willing to assume my financial burden, to you, you are to hand the payer a bill of sale to all my property."

After this and the sale of the lambs involved in this action Kelly came to the conclusion that the arrangement between them must be dissolved. Mrs. Longie tried to make arrangement with one Wayne Riggin to take over her deal with Kelly and the Northern Investment Corporation of North Dakota. On Dec. 4, 1951, she signed a bill of sale to Riggin covering her undivided one-half interest in the sheep and her whole interest in some other property on the ranch owned solely by her. The express consideration in the bill of sale was $3751.35 with the following explanation: "It being understood that I am transferring everything left on Kelly ranch in which I may have an interest; that Wayne Riggin is assuming my debt with the exception of a $75.00 check given to Kelly Offices and returned by the bank with notation, 'NSF.'" Mr. Riggin refused to take over the deal when he found out how deeply Mrs. Longie was involved, and writes Mr. Kelly:

"Francis Longie has proffered me a bill of sale to her undivided one-half interest in sheep and full interest in some other personal property; all of which is mortgaged to the Northern Investment Corp. of N. Dak. I am unable to accept this bill of sale because the price she wanted is more than the now remaining property is worth."

Mrs. Longie finally went to Montana leaving all of the mortgaged property on the Kelly ranch. Mr. Riggin agreed to take care of the sheep and property under an arrangement with Mr. Kelly. The sheep and the rest of Mrs. Longie's property were still being taken care of by Mr. Riggin at the time of the trial. No foreclosure had been had by Northern Investment Corporation of North Dakota or its assignee, the plaintiff. Mrs. Longie still owned her undivided one-half interest in the mortgaged property. She had tried to sell it to Mr. Riggin but failed because he thought she owed more on it than it was worth. She had given plaintiff a bill of sale in blank of not only her one-half interest in the sheep but her other personal property on the ranch to turn over to anyone who would pay her obligation to the investment corporation in full. There is no evidence that anyone had accepted her offer.

There is no evidence that the plaintiff converted the property or took it over as his own. He has not accepted the blank bill of sale authorized by Mrs. Longie but if he had done so that would only satis-

fy the mortgage debt in full and would mitigate only plaintiff's claim as to the mortgaged half interest in the lambs. If he foreclosed, the amount brought on foreclosure would be a matter only between him and Mrs. Longie. The defendant company would not have any claim to any excess in the proceeds over the mortgage debt any more than it could be held liable for any deficiency. Mrs. Longie might be entitled to an accounting but the defendant company could not take any advantage thereof.

The legal aspects of the situation are the same as if the mortgage was held by the original mortgagee, a separate and different entity. Plaintiff's rights under his co-ownership are different from his rights as an assignee of the mortgage. While the evidence shows his damages under the mortgage may be mitigated that has nothing to do with his damages by virtue of his co-ownership of a half interest in the lambs. Those rights remain as if he had never owned the mortgage and when so considered, plaintiff's interest as half owner of the lambs was clearly converted by the sale of the lambs by Mrs. Longie and the defendant.

The evidence does not show that there was any ratification of the sale by the plaintiff or that his actions created any waiver or estoppel on the part of plaintiff.

The judgment of the district court is affirmed.

MORRIS, C. J., and CHRISTIANSON, SATHRE and BURKE, JJ., concur.

On Rehearing

PER CURIAM.

We granted a rehearing in this matter. We heard arguments by counsel and re-examined the briefs and record. We have given the whole matter further consideration and abide by our original decision.