[L. A. No. 5653. In Bank.—August 24, 1921.]

## FIDELITY SAVINGS AND LOAN ASSOCIATION (a Corporation), Respondent, v. CITIZENS TRUST AND SAVINGS BANK (a Corporation), Appellant.

[1] BANKRUPTCY — RECEIVER—TAKING POSSESSION OF PROPERTY FROM THIRD PARTY.—A receiver of a bankrupt corporation appointed by an *ex parte* order of a referee which authorized him to take and hold possession of the property of the bankrupt until the appointment and qualification of the trustee has no authority to take possession of property once owned by the bankrupt and in the possession of a third party under a transfer valid under the bankrupt law, since such third party was not a party to the proceeding and had no opportunity to be heard therein.

[2] ID. — INVOLUNTARY DELIVERY OF POSSESSION — TRESPASS OF RECEIVER.—A receiver of a bankrupt corporation appointed by an *ex parte* order of a referee which authorized him to take and hold possession of the bankrupt's property is a trespasser, where his agents obtained possession of property once owned by the bankrupt in the possession of a third party, by means of force and threatened contempt proceedings.

[3] ID.—INCOME OF WRONGFULLY SEIZED PROPERTY—LIABILITY OF RECEIVER.—A receiver of a bankrupt corporation who wrongfully seized the property of a third person as property of the bankrupt is not relieved from liability to such third person for the income of the property while it was in the receiver's possession by an order of the referee directing its payment to the trustee.

[4] ID. — APPLICATION FOR RESTORATION OF PROPERTY — DAMAGES FOR TRESPASS—ABSENCE OF WAIVER.—Where property was wrongfully

---

seized by a receiver of a bankrupt appointed by an *ex parte* order of a referee which authorized him to take and hold possession of the bankrupt's property, the fact that the owner subsequently applied to the bankruptcy court for the restoration of the property did not constitute a waiver of the right to sue the receiver in the state court for the trespass, and to recover the money obtained by the receiver from the property while in the possession thereof.

[5] ID.—WRONGFUL SEIZURE—LACK OF BAD FAITH—EXEMPLARY DAMAGES.—A receiver appointed by an *ex parte* order of a referee in bankruptcy directing him to take and hold possession of the bankrupt's property is not liable in exemplary damages for wrongfully seizing property in possession of a third person, where he acted in good faith, used no violence, and actually believed that the order authorized the seizure.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank R. Willis, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

G. Harold Janeway, Hunsaker, Britt & Edwards, Robert B. Murphey and Hunsaker, Britt & Cosgrove for Appellant.

Milton K. Young and Lyndol L. Young for Respondent.

SHAW, J.—The defendant appeals from the judgment.

The complaint is voluminous but, in effect, it sets forth a cause of action against the defendant for damages for wrongfully, unlawfully, and oppressively seizing and holding possession of a hotel known as Hotel Schuyler, which was then a going concern and was then the property of the plaintiff. Judgment was given in favor of the plaintiff for the sum of $1,503.59, which the court found the defendant had received from the patrons of the hotel during the time it was in possession thereof, and for an additional sum of five hundred dollars allowed as exemplary damages.

In support of the appeal it is claimed that the evidence does not support the findings or judgment in several material particulars. The decision of these points depends in great measure on questions of law, there being little conflict in the evidence.

The main defense is that the defendant was lawfully authorized to take and hold possession of the hotel under and by virtue of an order of the referee in bankruptcy of the United States district court appointing it receiver of the assets and property of Hotel Schuyler, a corporation, which had been adjudged a bankrupt on its own petition by said court on May 24, 1916. The evidence shows that said corporation was duly adjudged a bankrupt on that day; that the matter was duly referred to the referee in bankruptcy, and that the referee, on May 26, 1916, by an *ex parte* order, on the petition of alleged creditors of said bankrupt, made an order appointing the defendant receiver of the estate of said bankrupt, authorizing it as such receiver "to take possession of, hold, preserve, care for, secure, and inventory the property of said brankrupt estate until the appointment and qualification of the trustee hereinafter to be chosen, and with the further authority to collect all accounts receivable of said bankrupt," and to operate the business of said bankrupt.

Under the authority of this order the defendant, on May 27, 1916, took from the plaintiff the possession of said hotel and held possession thereof until June 12, 1916, on which day it delivered possession thereof to one Levin, who had been elected trustee in bankruptcy of said bankrupt corporation. On June 14, 1916, the trustee, in pursuance of an order of said United States district court, restored to plaintiff the possession of said hotel. During the time the defendant held possession as aforesaid as receiver it conducted the hotel business therein and in so doing took and received money belonging to the plaintiff amounting to $1,503.59, which it has not returned or repaid to the plaintiff.

At the time the receiver thus took possession of the hotel the plaintiff had been in possession thereof and had been carrying on the hotel business therein on its own behalf ever since November, 1915. It had been put in possession thereof by said Hotel Schuyler Corporation by reason of the plaintiff's rights thereto under a deed of trust executed to it by said bankrupt corporation for the securing of debts of said corporation amounting to one hundred and forty thousand dollars. Afterward, on January 26, 1916, the matter was adjusted by a deed executed by said Hotel Schuyler, a corporation, to the plaintiff, and conveying to it

the remaining rights of said Hotel Schuyler in and to said hotel and the furniture and furnishings therein.

[1] For the purposes of this case, it may be conceded that the referee in bankruptcy had power to make an *ex parte* order directing that a receiver be appointed in the bankruptcy proceeding to take and hold possession of any and all property belonging to the bankrupt at the time of the adjudication. The decision of this case does not depend on the existence of such power. The case made by the plaintiff is that it was the owner of the property of which the receiver took possession, and that the bankrupt corporation, Hotel Schuyler, did not at that time have either the possession or the right of possession of that property. While the order was good against the bankrupt and those holding as its agents or servants, it was made *ex parte*, and it was not enforceable against third persons holding possession of property once owned by said bankrupt, under transfers made by the bankrupt to them which were valid under the bankrupt law. The plaintiff was not a party to the proceeding, nor to the application for the appointment of the defendant as receiver therein, and it was not bound thereby. The receiver could not justify under an order made in that manner. It was in no better position than a sheriff who makes a levy on property in the possession of a third person, belonging to such third person, and to which the attachment or execution defendant has neither title or right of possession. It was a mere trespasser. An attack upon a seizure so made is not a collateral attack upon the order appointing the receiver. That is conceded to be valid. The real contention, and it is well taken, is that the seizure was not within the authority conferred by the order, that the property which it gave authority to take and hold was the property of the bankrupt; not that of third persons. The right of the plaintiff to keep possession of the hotel could not be divested, except by an order made in a proceeding to which it was a party and in which it had been given an opportunity to be heard. To take it in any other manner would be to deprive it of its property without due process of law, a thing forbidden both by our own constitution (art. I, sec. 13) and by the constitution of the United States (arts. V, XIV, sec. 1).

The constitution of the United States, by article V aforesaid, withholds from the Congress the power to enact a law authorizing such taking of property. It is true that the bankrupt law authorizes a provisional summary seizure of property by order of the court where a creditor, or the trustee, after his appointment, alleges facts showing that the person in possession holds it under an unlawful preference to a creditor, or in virtue of a transfer made to defraud the creditors of the bankrupt, and that the seizure of such property is necessary for the preservation of the estate. Such seizure has been held to be authorized by sections 2, 3, 60, and 69 of the act. In such cases the property is taken for the purpose of holding and preserving it until the final order in the matter and the law provides for adequate security to the adverse claimant if the facts alleged are not established at the hearing. But no proceeding to obtain such an order was begun in the bankruptcy proceeding here in question, and no such order was made by that court. In no other manner does the act purport to authorize the taking of property in the bankrupt proceeding in the adverse possession of a third person, before such person is brought in by process and is given an opportunity to defend. (Loveland on Bankruptcy, p. 100; Remington on Bankruptcy, secs. 1652, 1696.) It is also true that it has been held that the court may in the bankruptcy proceeding make inquiry in regard to the question whether the property is in the virtual or constructive possession of the bankrupt and is in legal effect the property of the bankrupt, and that if it so determines, it may proceed accordingly to hold the property. But in the present case there was no such inquiry made and the order appointing the receiver was not based on any decision to that effect.

The case comes within the rule set forth in *Tapscott* v. *Lyon*, 103 Cal. 297, [37 Pac. 225]. In that case there had been a proceeding in insolvency and an adjudication of insolvency and the defendant had been appointed receiver to take and hold possession of all the property of the insolvent. The plaintiff was in possession of certain goods formerly belonging to the insolvent but which had been transferred to the plaintiff before the proceeding in insolvency. He sued the defendant for damages for the wrongful taking and conversion of the goods. The court held that

the order appointing the receiver authorizing him to take possession of the goods of the insolvent (which was identical to that extent with the order of the referee herein involved), gave the receiver no authority to seize the goods in the possession of the plaintiff and claimed by him, "however manifest the fraud through which they were acquired," and that if he took property from the possession of one who was not a party to the proceedings in which he received his appointment. he "does so at his personal risk." This is the precise doctrine invoked by the plaintiff in the present case, and the facts are in all respects similar to those referred to in *Tapscott* v. *Lyon*. It is authority, therefore, for the proposition that the defendant was not authorized by the order to take goods from the possession of the plaintiff under claim of title.

The defendant relies on the further statement in the Tapscott case upon other facts appearing therein. The court there held that the duty of the receiver, if he believed that the goods really belonged to the insolvent, was to demand the same, and upon a refusal to deliver the same to bring an action for the recovery thereof. But it appeared in that action that he did demand the goods and that thereupon the plaintiff voluntarily surrendered them. Upon this the court said that when they were surrendered the receiver could not refuse to accept them, and that when he did accept the possession thus given the goods were in his custody, that is, in the custody of the law, and that thereupon the court in the insolvency proceeding acquired jurisdiction of the property by the consent of the plaintiff, so that the only remedy of the plaintiff thereafter was to apply to that court for relief and obtain an order for the redelivery, upon showing that his title was superior to that of the insolvent, and that since the plaintiff voluntarily surrendered the goods on demand and thus put them within the jurisdiction of the court, the receiver did not take or hold them as a trespasser and was not liable in an action for trespass.

[2] If it were true that the plaintiff had voluntarily yielded to the defendant's demand for the possession of the hotel, the doctrine stated in the last-mentioned portion of the opinion in *Tapscott* v. *Lyon* would be applicable. But the court below found that the defendant seized

and forcibly took possession of the hotel, with knowledge that the plaintiff was in possession and was claiming ownership, and that the possession was not voluntarily given to the defendant by the plaintiff. This finding brings the case within the rule first stated in *Tapscott* v. *Lyon.*

We think there is sufficient evidence to sustain the material portion of this finding. The court was authorized from the evidence to find that the possession was not given voluntarily and that there was no surrender of the property on the demand of the receiver. The evidence showed that the defendant's agents gained access to the hotel building through the back door and proceeded to a room therein occupied as the office of the manager; that the manager was temporarily absent, and that they then summoned the clerk, who was at the desk in the main lobby, and told him that they were in possession of the premises; that they then shoved him out of the office, conducting him to the desk in the main lobby behind the counter, and put seals on the cash drawer and safe; that at about that time the manager entered the hotel and was told by the said agents that they were in possession in virtue of the order appointing the receiver, which was then exhibited to him. Demand was then made for the keys, which he did not immediately deliver. He was told that if he did not give up possession the United States marshal would be called to put him out and that he would be in contempt of court. The hotel was in Long Beach and the place of business of the plaintiff was in Los Angeles. After telephoning to the plaintiff's office in Los Angeles the manager turned over the keys through fear of being taken to court on a charge of contempt. From all this and other evidence the court was justified in determining that the defendant seized possession of the hotel and that the same was not voluntarily given to it by the plaintiff. It is immaterial whether actual force was used or not. That part of the finding may be disregarded. A possession thus given cannot be said to have been voluntarily surrendered. The defendant was a trespasser in so doing and it was not justified by the order under which it acted. It was therefore liable for the return of the money which it received from the operation of the hotel during the time it was in the occupancy thereof.

[3]    The payment of the money to the trustee in bankruptcy by the defendant, in pursuance of an order of the referee in bankruptcy directing it to do so, did not relieve the defendant of liability for the return of the money to the plaintiff. The defendant was not notified of the making of the order nor of the hearing of the application therefor; it made no appearance in that proceeding and was not a party thereto. The referee had no more jurisdiction to direct the payment of the money to the trustee than it had to order the taking of the property from the plaintiff. Conceding that the referee might have made inquiry with reference to the validity of the transfer from the bankrupt to the plaintiff prior to the adjudication in bankruptcy, the fact remains that no such inquiry was made and no such determination given, and it also appears by the evidence that the transfer of possession and of the right of possession of the hotel property was made more than four months prior to the adjudication, and that there was no ground upon which it could be declared invalid under the Bankruptcy Act, [1 Fed. Stats. Ann., p. 495 et seq.; U. S. Comp. Stats., sec. 9585 et seq.].

[4]    The defendant further claims that the order of the United States district court made on June 14, 1916, directing the trustee to restore the possession of the hotel to the plaintiff was made on the application of the plaintiff, and that this was a submission to the jurisdiction of the court in the bankruptcy proceeding over said property and the proceeds thereof, up to the time of the said order for restoration. When the wrongful taking took place the plaintiff had its option to proceed in either of two ways. It could treat the order as ineffectual to authorize the taking and void to that extent and sue in the state courts for the recovery of the possession of the property, or it could upon the same grounds apply to the district court in which the bankruptcy proceeding was pending for an order in that proceeding restoring possession to it. It is true that it made such application to the district court for the restoration of the hotel property and it was given to it in accordance with its application, the court holding that the taking of the hotel by the receiver was without authority and that the trustee had no right to the possession thereof. It does not appear, however, that the plaintiff ever made any appli-

cation to the district court or the referee for the return of the money obtained by the defendant as receiver from the operation of the hotel while it was in possession thereof. That relief was not included, so far as appears, in the application for the restoration of the hotel property, and it follows that the defendant did not in any manner waive its right to take either of the two courses above suggested by any submission to the jurisdiction of the court with respect to said money. It had the right, therefore, to resort to the ordinary action for damages for trespass in order to recover the money from the receiver.

The court below found that the seizure of plaintiff's property aforesaid was made by the defendant wantonly and oppressively and that by reason thereof the plaintiff was entitled to five hundred dollars exemplary damages.

[5] We are of the opinion that this portion of the finding is not supported by sufficient evidence. While it is true that the conduct of the agents of the defendant in taking possession of the property was somewhat abrupt and overbearing, there was no actual violence on their part, and we think it is plain from all the testimony that the defendant and its agents actually believed that the order appointing the receiver gave it authority to take the property in controversy, and that the seizure was made by its agents in good faith and for the purpose of carrying out the authority which they supposed they had as agents of the receiver to execute said order. There was no exhibition of any intent to make use of the order, knowing it to be void, for the purpose of overawing the plaintiff's agents in possession of the hotel. No sufficient evidence of the attempt to act oppressively or wantonly appears in the record. The appellant may obtain all the relief it is entitled to from this error of the court by a modification of the judgment. A reversal thereof is not necessary.

It is ordered that the judgment be modified by deducting therefrom the sum of five hundred dollars allowed by the court as exemplary damages, and that as so modified the judgment be affirmed, the appellant to recover the cost of appeal.

Sloane, J., Shurtleff, J., Lennon, J., and Wilbur, J., concurred.