WOODRING, et al, Respondents, v. WINNER NATIONAL BANK, of Winner, S. D., et al, Appellants.

(227 N. W. 438.)

(File No. 6553. Opinion filed November 8, 1929.)

*E. E. Wagner*, of Mitchell, and *O. D. Olmstead*, of Winner, for Appellants.

*W. J. Hooper*, of Gregory, and *Roscoe Knodell*, of Winner, for Respondents.

BROWN, J.  In January, 1925, Frank Vyralek, who owned and carried on a meat market business in Winner, was in financial difficulties, the Winner National Bank having a judgment against him for $2,663, upon which an execution had been issued and was in the hands of the sheriff, and on the 5th day of that month Vyralek made a bill of sale of all personal property in the meat market to plaintiffs and gave them a lease for five years of the

building and plaintiffs at once went into possession of the market and carried on its operation. Plaintiffs paid no cash consideration at the time of the transfer, but gave three notes, two for $1,000 each and one for $3,000, and assumed payment of Vyralek's bills to the amount of $785. The two notes for $1,000 each were delivered to Vyralek's wife who had a mortgage on the property, and the $3,000 note was left in the hands of the attorney who drew up the bill of sale. It appears that he was to hold the note as a protection to the purchasers in case any adverse claims to the property should be asserted; $400 had been paid on one of the $1,000 notes at the time of the occurrence upon which this action is founded.

In the sale or transfer of the property from Vyralek to plaintiffs, the provisions of the Bulk Sales Law (Rev. Code 1919, §§ 914-921) were not in any manner complied with, and plaintiffs knew that there was an execution in the hands of the sheriff on the judgment of Winner National Bank. On February 18th defendants Winner National Bank, G. L. Thompson, and Joseph Pestal filed a petition in involuntary bankruptcy against Vyralek and on the same day filed with the referee in bankruptcy an affidavit of O. D. Olmstead, one of the attorneys for the petitioners, stating that Vyralek had committed an act of bankruptcy on December 1, 1924, by giving mortgages to his wife on the meat market property for the purpose of hindering, delaying, and defrauding petitioners, and that on January 7th he committed an act of bankruptcy by causing to be registered in the office of the register of deeds a bill of sale of all property of a chattel nature contained in the meat market to the plaintiffs herein, which bill of sale was alleged to be without consideration and made for the purpose of hindering, delaying, and defrauding the petitioners, and asking for the issuance of a special warrant to the marshal directing him to seize all of the property real and personal of Vyralek. On this affidavit the referee issued a warrant to the marshal on February 18th, directing him to take possession of all of the estate real and personal of Vyralek and all of his books of account and papers and hold and keep the same subject to the further order of the court.

It is admitted that the defendants Winner National Bank, M. P. Dougherty, G. L. Thompson, and Joseph Pestal instructed the marshal to take possession of the property described in the

complaint, which property at the time of the seizure was in the actual possession of plaintiffs and all of which had been in their possession from January 5th, except in so far as some of it had been sold in the usual course of retail trade and had been replaced by other similar property purchased by plaintiffs in the course of such retail trade. On February 19th the marshal went to the meat market, and against the protest of plaintiffs and under threats of arrest, as testified to by them, took possession of all of the property, took the money out of the cash register, and locked up the premises. It does not appear that any trustee in bankruptcy was ever appointed, but on March 20th Vyralek having procured the necessary funds to pay petitioner's claims, a stipulation was entered into between the attorney for petitioners and attorneys for Vyralek that on payment by Vyralek of the amount of the claims of petitioners, the bankruptcy proceedings be dismissed, and in pursuance of this stipulation an order was entered by the bankruptcy court on March 20th, reciting the payment, and dismissing the petition and directing that all property of the alleged bankrupt seized under the warrant hereinbefore referred to be returned to Vyralek, that the proceeds of the property sold by the marshal as perishable while he had possession be turned over to the attorneys of the alleged bankrupt, and that the petitioners be relieved from any liability by reason of filing the petition in bankruptcy or taking possession of the property of the alleged bankrupt. On March 26th the property was returned to plaintiffs through the delivery of the keys to them by Vyralek, and the attorneys for Vyralek deposited in the bank to the credit of plaintiffs some $500, which was the proceeds of perishable goods sold by the marshal. In this action for damages for wrongful taking of plaintiff's property and interruption of their business, testimony on behalf of plaintiffs was to the effect that property seized by the marshal and not returned to them was of the value of $1,123.48, that the refrigerating machinery had been allowed to get out of order while the place was closed and the expense of repairing it was $55, that the value of the use and occupation of the building and tools during the time they were deprived of its use was $50 a week, and that the average daily profits of the business prior to February 20th was $15 a day. There was testimony that it took about three months for the business to get back to what it was before the interruption, but nothing

to show how much the profits were lessened during that period. Verdict was returned in favor of plaintiffs for $2,956, upon which judgment was entered, and the appeal is from the judgment and an order denying a new trial.

According to the testimony on behalf of plaintiffs, they were deprived of possession for 35 days and their average profits would have been $15 a day. Under the evidence loss of profits did not exceed $525. The value of the use and occupancy of the premises and tools was said to be $50 a week. The profits could only be realized by using the premises and tools, so that it is clear that plaintiffs would not be entitled to recover both for loss of profits and for use and occupancy of the premises and tools. Again, the court instructed that triple damages, for the use of the premises and tools, might be awarded if the jury found that plaintiffs had been forcibly deprived of possession. We do not think that Rev. Code 1919, § 1994, providing that "for forcibly ejecting or excluding a person from the possession of real property, the measure of damages is three times such a sum as would compensate for the detriment," is applicable under the evidence in this case. No physical force was used to either gain or hold possession; the most that the evidence shows is that the marshal said that if plaintiffs did not surrender possession he would have to arrest them. It is clear that the marshal honestly believed that he had the right to take possession under the warrant which he held. In Baldwin v. Bohl, 23 S. D. 395, 122 N. W. 247, we held that where a defendant was holding possession of real property under a claim of right he was not liable for triple damages. The instruction that triple damages might be recovered in this action was erroneous, as was also the allowance of damages both for use and occupation of the premises and for loss of profits which could only be made by such use and occupation.

The jury were also instructed that if they believed that defendants in seizing the property and retaining the possession thereof were guilty of oppression or malice, then in addition to actual damages they might give exemplary damages. The amount of the verdict conclusively shows that a considerable sum must have been included therein by way of exemplary damages. Where exemplary damages are given, it is the better practice that they should be separately stated. Where that is done, should an appel-

late court conclude that exemplary damages were not applicable under the circumstances of the case, and the proper measure had been applied in ascertaining the actual damages, a new trial could be avoided by remission of the known amount included as exemplary damages. In the present case there is no separation of actual and exemplary damages, and we discover no evidence which would warrant the submission to the jury of the question of exemplary damages. The marshal was acting under an order regular on its face and there is no evidence that in taking possession of the property he acted arbitrarily or oppressively, the only evidence being that he stated that unless possession was delivered to him he would have to place plaintiffs under arrest, and we are of opinion that it was error for the court to submit to the jury the question of exemplary damages. Fidelity Savings & Loan Ass'n v. Citizens' Trust & Savings Bank, 186 Cal. 689, 200 P. 631.

■ Appellant contends that Vyralek transferred the property to plaintiffs with intent to defraud his creditors, that such intent was known to plaintiffs because they knew that there was an execution in the hands of the sheriff at the time, and the transfer being fraudulent conveyed no title to plaintiffs, but that they simply took the property as trustee for Vyralek's creditors. But while in a plenary action Vyralek's creditors could have had the transfer set aside as fraudulent as to them, yet as between Vyralek and plaintiffs it is clear that title to the property passed to plaintiffs at the time they took possession under the bill of sale. There is no evidence that the transfer was merely colorable or that Vyralek retained any interest in, or control over, the property after he turned over possession and delivered the bill of sale on January 5th.

■ Appellant contends that seizure by the marshal under the summary proceeding pursued in this case was authorized by section 2, subd. 3, of the Bankruptcy Act, 11 USCA § 11(3), which provides that courts of bankruptcy shall "* * * appoint receivers or the marshals, upon application of parties in interest, in case the court shall find it absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified." This section only authorizes the marshal to take charge of the property of bankrupts, not of third parties who claim adversely to the bankrupt.

■ In USCA, title 11, in the notes to section 109, at page 275, it is said: "On the other hand, as in cases where a receiver is appointed (see note 125 under section 11) this section does not authorize the court to issue a warrant to the marshal to take property away from the possession of a third party who holds it under a bona fide claim of right or title"—citing a large number of cases. There is no question but what plaintiffs in this case were making a bona fide claim that they owned the property. Whether that claim would be sustained as against creditors of Vyralek in an action in court is not the equestion, but whether they were sincere in making the claim, and not merely making it as a pretense while they knew the ownership was in another.

In Re Kelly (D. C.) 91 F. 504, it is held that a summary warrant to the marshal cannot issue to take property in the possession of a third party not a party to the proceedings, although the conveyance to him is alleged to be an illegal preference and voidable. See, also, In re Rockwood (D. C.) 91 F. 363, and In re Andre (C. C. A.) 135 F. 736.

In Re Kolin (C. C. A.) 134 F. 557, 559, which is one of the cases cited in support of the foregoing quotation, it is said: "If [a third party is] in such possession, however fraudulent his title, the receiver has no right to take possession from him against his protest."

Under the evidence in this case there was no error in the instruction given by the court that: "The jury is further instructed that the order of the referee in bankruptcy under which the deputy marshal seized the property was issued in what is known as a summary proceeding; that the property so seized was in the actual possession of the plaintiffs who claim to own the same adversely to Vyralek, and the marshal was not justified in seizing the property under such order and his actions in so doing rendered the defendants liable just the same as if he had acted without any order."

■ There was no error in sustaining the objection to the question asked Vyralek with reference to the conversation between him and either of the plaintiffs concerning the agreement, Exhibit "2," nor in excluding appellant's offer of proof on the same subject. All oral negotiations prior to the execution of the agreement were merged in the agreement and, besides, the agreement itself was received in evidence, and it discloses clearly and plainly everything

that was sought to be brought out by the question to Vyralek or to be shown by the offer of proof.

For the errors in the instructions on the question of damages the judgment and order appealed from are reversed, and the cause remanded for a new trial.

SHERWOOD, P. J., and POLLEY, and CAMPBELL, JJ., concur.

BURCH, J., disqualified and not sitting.