2005 ND 65

**Gene A. BURI, Plaintiff and Appellee**

v.

**James A. RAMSEY and Rhonda Ramsey, Defendants and Appellants.**

**No. 20040164.**

Supreme Court of North Dakota.

March 23, 2005.

Theresa L. Zimmerman, American Legal Services, Bismarck, N.D., for defendants and appellants.

R. James Maxson, Maxson Law Office, Minot, N.D., for plaintiff and appellee.

MARING, Justice.

[¶ 1] James and Rhonda Ramsey ("Ramseys") appeal from a trial court judgment against them awarding damages to Gene Buri for conversion. We affirm in part, reverse in part, and remand for further proceedings in accordance with our opinion.

## I

[¶ 2] In August 2002, the Ramseys agreed to purchase a parcel of land from Peter and Helen Weninger ("Weningers"). A handwritten condition included in the purchase agreement stated: "Wind Mill & 6 Grain Bins are not included. Seller has right to ingress & egress & have until 1 Apr 03 to Remove Bins & Wind Mill. Buyer will permit Seller To have an Auction in the Quonset in Oct After Closing." The purchase agreement did not otherwise refer to the grain bins.

[¶ 3] In October 2002, the Weningers held an auction and all six of the grain bins were sold to Buri. Buri had been storing grain in the bins at the time of the land sale in August, and this grain remained in the bins at the time of the auction.

[¶ 4] The events following the auction sale were disputed. Buri claimed that on the same day as the auction he spoke to the Ramseys, informing them that he had purchased the bins. Buri testified that in December 2002, he went to the property to clean the grain out of the bins. While he and his sons were in the process of cleaning the bins, the Ramseys came to the site where the bins were located and said, "You cannot have the grain bins; they're not yours." Buri continued to gather the grain and did not respond. Buri testified that he next communicated with the Ramseys near the end of March 2002, when he called Mr. Ramsey and "told him I was going to get the grain bins. And he said I could not have them, I would be trespassing if I did." Buri testified that after being threatened with a trespassing charge, he spoke with the state's attorney and the sheriff regarding the situation but did not again attempt to contact the Ramseys or remove the bins. His next action was to have his attorney write the Ramseys a letter on June 26, 2003, threatening legal action if he was not granted access to the land to remove the bins.

[¶ 5] The Ramseys testified that they have never seen or spoken to Buri, not in October after the auction, not in December when Buri claims to have been on their land removing grain, and not in March when Buri claims to have telephoned them. The Ramseys testified that they were out of town, both in December 2002 and March 2003, when Buri claims to have spoken to them. The Ramseys' daughter, who was home in December 2002, testified that she did see "someone" at the grain bins in December but that she did not know who it was and did not speak to the person. The daughter also testified that her parents were not home at the time, that they traveled off and on during December, and

that she could not be sure of the exact dates.

[¶ 6] The Ramseys claim their only knowledge of the grain bin dispute comes from two letters they received after April 1, 2003. The first was a letter their attorney received from the Weningers' attorney, dated March 31, 2003, asking for an extension of the contractual deadline because the Ramseys had denied the Weningers' request to pick up the bins. The second was the aforementioned June 2003 letter from Buri's attorney, threatening legal action.

[¶ 7] After a bench trial, the trial court concluded the Ramseys' conduct, which included wrongfully detaining the grain bins and denying Buri access to their land to retrieve the bins, constituted conversion. The trial court found damages in the amount of $1300 plus 6 percent interest from January 1, 2003, to the date of judgment and ordered the Ramseys to allow Buri access to their property for thirty-days post-judgment to remove the grain bins. The Ramseys appeal, claiming first, this dispute should have been resolved under contract law; second, even if the law of conversion is applicable, their actions did not constitute conversion; and third, if the conversion is affirmed, the damage award is clearly erroneous.

## II

[¶ 8] The Ramseys argue that they could not have converted Buri's property because they were unaware of any rights Buri had in the bins, that they did not act wrongfully or dispose of either the Weningers' or Buri's property, and that Buri suffered no damages. Rather, the Ramseys contend this is a simple contract dispute. The Ramseys assert the terms of the land purchase agreement clearly stated that the Weningers had until April 1, 2003, to remove the grain bins. Failure to

remove them by that date resulted in a forfeiture of the bins under the terms of the contract. Therefore, the Ramseys argue they did not wrongfully acquire or deprive anyone of access to the grain bins, which is required for a finding of conversion.

[¶ 9] A determination of whether the trial court correctly employed the law of conversion rather than the law of contract is dependent on a determination of the applicable facts. According to Buri, the Ramseys wrongfully denied him access to the grain bins, preventing him from removing them prior to the April 1 deadline. The Ramseys contend they were unaware Buri had purchased the bins and had never seen or spoken to him prior to the day of trial. Therefore, the Ramseys contend the failure of either Buri or the Weningers to retrieve the bins prior to April 1, 2003, resulted in a forfeiture under the terms of the land purchase contract. The adoption of Buri's version of events places this dispute within the law of conversion, whereas the adoption of the Ramseys' version requires the application of contract law.

[¶ 10] "In a bench trial, the trial court is the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations. We do not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting testimony. We give due regard to the trial court's opportunity to assess the credibility of the witnesses, and the court's choice between two permissible views of the evidence is not clearly erroneous." *Akerlind v. Buck*, 2003 ND 169, ¶ 7, 671 N.W.2d 256 (quotation omitted).

[¶ 11] The trial court found Buri's testimony and his version of events more credible and, consequently, applied the law of conversion. Giving due regard to the

trial court's assessment of the credibility of the witnesses, we will not reweigh the evidence. The trial court's factual findings are supported by the record and are not clearly erroneous. Therefore, the trial court's application of the law of conversion to resolve this dispute is correct.

### III

[¶ 12] The Ramseys argue that even if the trial court correctly concluded the law of conversion was applicable, it erred when it concluded their actions constituted conversion.

[¶ 13] "We have held the trial court's determination about whether a conversion has been committed is a finding of fact which will not be overturned on appeal unless it is clearly erroneous." *Paxton v. Wiebe*, 1998 ND 169, ¶ 29, 584 N.W.2d 72. "A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction a mistake has been made." *Id.*

[¶ 14] Our Court has held that "[c]onversion consists of a tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner." *Ritter, Laber and Associates, Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 11, 680 N.W.2d 634; *see also Paxton*, 1998 ND 169, ¶ 28, 584 N.W.2d 72. "The gist of a conversion is not in acquiring the complainant's property, but in wrongfully depriving him of it, whether temporarily or permanently, and it is of little relevance that the converter received no benefit from such deprivation." *Paxton*, at ¶ 28 (quoting *Christensen v. Farmers State Bank of Richardton*, 157 N.W.2d 352, 357 (N.D.1968)). Conversion does not require bad intent on the part of the converter, but only an intent to control

or interfere with an owner's rights to use to an actionable degree. *Paxton*, at ¶ 28.

[¶ 15] Buri testified that he purchased the grain bins at an auction sale in October 2002 and that the Ramseys told him twice, first in December 2002 and again in March 2003, that he could not remove the bins from their land. Based on this testimony, the trial court found "Gene Buri owned the grain bins as of October 12, 2002" and "the Ramseys wrongfully detained the grain bins by not allowing [Buri] access onto their property ... thus wrongfully deprived him of his right to his property," thereby satisfying the elements of conversion. We are not left with a definite and firm conviction a mistake has been made. Therefore, we conclude the trial court's finding that the Ramseys converted Buri's property is supported by the evidence and is not clearly erroneous.

### IV

[¶ 16] The Ramseys argue that granting Buri both the monetary value of the bins and possession of the bins is not authorized under N.D.C.C. § 32–03–23. The issue presented is the proper measure of damages.

[¶ 17] The appropriate standard of review in an appeal challenging a trial court's award of damages in a bench trial is whether the trial court's findings of fact on damages are clearly erroneous. *Nord v. Herrman*, 2001 ND 11, ¶ 16, 621 N.W.2d 332; N.D.R.Civ.P. 52(a). Under N.D.R.Civ.P. 52(a), a finding of fact is clearly erroneous if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law. *In re K.M.G.*, 2000 ND 50, ¶ 4, 607 N.W.2d 248.

[¶ 18] Section 32–03–23, N.D.C.C., provides alternative bases for valuing converted property:

The detriment caused by the wrongful conversion of personal property is presumed to be:

1. The value of the property at the time of the conversion, with the interest from that time; or

2. When the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and

3. A fair compensation for the time and money properly expended in pursuit of the property.

N.D.C.C. § 32–03–23.

[¶ 19] The trial court's calculation of damages is expressed in its Memorandum Opinion, which states, in pertinent part:

Pursuant to N.D.C.C. 32–03–23[sic], it basically states that damages are the value of the detriment caused by the wrongful conversion of property to be either the value of the property at the time of the conversion or the highest market value of the property at any time between the conversion and the verdict, provided the action was prosecuted with reasonable diligence. In the case at hand, the plaintiff is asking for double the value of the grain bins ($2,600) plus the right for the plaintiff to go on the property and retrieve his property. It appears to the Court that a reasonable amount of damages would be $1,300, which was the value of the grain bins at the time of conversion, plus interest at the rate of 6% form [sic] January 1, 2003, to the date of judgment, plus the Ramseys must allow Gene Buri the right to access on their property to remove the grain bins within 30 days of the date of judgment.

[¶ 20] We have previously examined the calculation of damage awards under N.D.C.C. § 32–03–23 and concluded that the injured party has the option of choosing either N.D.C.C. § 32–03–23(1) or § 32–03–23(2) to determine the value of the converted property. *Harwood State Bank v. Charon,* 466 N.W.2d 601, 604 (N.D.1991); *National Bank of Harvey v. International Harvester Co.,* 421 N.W.2d 799, 806 (N.D.1988); *Frank v. Schaff,* 123 N.W.2d 827, 830 (N.D.1963). Section 32–03–23, N.D.C.C., "creates a presumption that the detriment caused by the conversion equals the value of the property." *National Bank,* at 804. In *Harwood State Bank,* our Court considered what type of damages were contemplated by N.D.C.C. § 32–03–23(3). Noting that N.D.C.C. § 32–03–23 and its California equivalent, California Civil Code § 3336, share the Field Civil Code as a common source, our Court considered California's interpretation of the phrase "time spent pursuing the property" as persuasive. *Harwood State Bank,* at 605–06. Consequently, a plaintiff may choose either N.D.C.C. § 32–03–23(1) or § 32–03–23(2) to determine the value of the converted property and in addition, under § 32–03–23(3), request reimbursement for specific costs incurred to recover the actual property, which have included "hauling charges, temporary storage charges and travel expenses incurred while searching for the property," as distinguished from litigation costs. *Harwood State Bank,* at 605–06.

[¶ 21] However, in *Harwood State Bank,* 466 N.W.2d 601, *National Bank,* 421 N.W.2d 799, and *Frank,* 123 N.W.2d 827, the owners of the converted property were permanently, not just temporarily, deprived of their property.

[¶ 22] In *Northrup v. Cross,* 2 N.D. 433, 51 N.W. 718 (1892), Cross, a county sheriff, wrongfully confiscated livestock from Northrup and later sold the livestock at auction. Northrup purchased the live-

stock at the auction, thus regaining possession. *Id.* Our Court concluded that "[w]hen a party whose property has been wrongfully taken by an officer, and sold at judicial sale, buys such property in at such sale, he is not entitled, in an action of claim and delivery against the officer, to judgment for the value of the property, but only for the sum which it cost him to regain possession, with interest on such sum from the time of payment." *Id.* at 719. We noted that this general principle has been applied to conversion cases. *Id.* Our Court has also concluded the owner of property converted by another can only recover damages for the "actual losses suffered by the [owner]." *Frank,* 123 N.W.2d at 830 (citing *Coan v. Plaza Equity Elevator,* 61 N.D. 627, 239 N.W. 620, 624 (1931)).

[¶ 23] Because we have viewed California case law as persuasive in our interpretation of N.D.C.C. § 32–03–23, we note California courts have concluded "although good faith and mistake are not defenses to an action for conversion, the plaintiff's damages will be reduced if the defendant returns the property or the plaintiff otherwise recovers the property." *Krusi v. Bear, Stearns & Co.,* 144 Cal. App.3d 664, 192 Cal.Rptr. 793, 798 (1983); *see also Blewett v. Miller,* 131 Cal. 149, 63 P. 157 (1900). "The rule is that, 'where one recovers his property again which had been unlawfully taken from him, he is considered as having received it in mitigation of damages'; and the measure of damages, in the absence of special damage, is the expense of procuring its return (with interest)." *Blewett,* at 157 (quoting 1 Sutherland, *Damages* § 239 (1893)).

[¶ 24] In the present case, Buri asked for "double the value of the grain bins ($2600)" plus the right to retrieve the property. The trial court, after correctly noting that the first step in determining the amount of damages is to employ either

N.D.C.C. § 32–03–23(1) or § 32–03–23(2) to value the property, stated further that "[i]t appears ... a reasonable amount of damages would be $1,300 ... plus interest ... plus ... the right to access on their property to remove the grain bins." This language indicates a misunderstanding of N.D.C.C. § 32–03–23.

[¶ 25] In a situation such as exists in the case at bar, the plaintiff must first elect to utilize either N.D.C.C. § 32–03–23(1) or N.D.C.C. § 32–03–23(2) to establish the value of the property. If the owner elects a return of the converted property, the present value of that property must be considered in mitigation of damages established under subsection 1 or 2 of N.D.C.C. § 32–03–23. *See Frank,* 123 N.W.2d at 830 (citing *Coan v. Plaza Equity Elevator,* 61 N.D. 627, 239 N.W. 620, 624 (1931)). The owner also is entitled to damages under N.D.C.C. § 32–03–23(3) which include "[a] fair compensation for the time and money properly expended in pursuit of the property." N.D.C.C. § 32–03–23(3). Here the record does not indicate evidence of specific costs incurred by Buri in "pursuit" of the converted property under N.D.C.C. § 32–03–23(3). There is also no evidence in the record of any damages caused to Buri by reason of being deprived of the grain bins temporarily; i.e., loss of use and diminution in value. However, if the trial court desires, it can take further evidence on the issue of damages.

[¶ 26] The trial court's damage award is based on an erroneous view of the law, and we reverse and remand for a damages award consistent with this opinion.

V

[¶ 27] Buri argues that he should be awarded attorney's fees and costs on appeal. Under N.D.R.App.P. 38, this Court may award attorney's fees if an appeal is frivolous. *Dietz v. Kautzman,*

2004 ND 119, ¶ 17, 681 N.W.2d 437. "An appeal is frivolous under Rule 38, N.D.R.App.P., if it is flagrantly groundless, devoid of merit, or demonstrates persistence in the course of litigation which could be seen as evidence of bad faith." *Riemers v. Peters–Riemers*, 2004 ND 153, ¶ 38, 684 N.W.2d 619.

[¶ 28] Buri argues the Ramseys' contention that this is a contractual dispute rather than a conversion is without merit because no contractual relationship existed between the parties. Further, Buri argues that although the Ramseys challenged the trial court's factual findings, they failed to "make any showing the District Court was clearly erroneous in its factual findings."

[¶ 29] We are not persuaded by Buri's argument and, in fact, have reversed the trial court's damage award to Buri. Therefore, Buri's request for attorney's fees and costs under Rule 38 is denied.

## VI

[¶ 30] We affirm that part of the trial court's judgment applying the law of conversion and finding the Ramseys' actions constituted wrongful conversion. We reverse the trial court's award of damages and remand for further proceedings consistent with this opinion, and we deny Buri's request for attorney's fees and costs.

[¶ 31] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.

[¶ 32] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.