2006 ND 215

**Danny R. LIVINGGOOD, Plaintiff and Appellee,**

v.

**Aaron BALSDON, Defendant and Appellant.**

No. 20060130.

Supreme Court of North Dakota.

Oct. 17, 2006.

Cameron D. Sillers, Cameron D. Sillers, P.C., Langdon, N.D., for plaintiff and appellee.

Neil W. Fleming, Fleming, DuBois & Fleming, P.L.L.P., Cavalier, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Aaron Balsdon appeals the district court's judgment on remand awarding Danny Livinggood treble damages based on one year of anticipated lost profits for forcibly ejecting Livinggood from the farm property he was leasing from Balsdon. We affirm.

I

[¶ 2] In February 2003, Livinggood entered into a five-year farm lease with DeWayne Balsdon. Livinggood farmed the land under the lease for one year, made the lease payment in advance for the next farm year, and prepared the land in the fall of 2003. In April 2004, Aaron Balsdon purchased the farmland from his uncle, DeWayne Balsdon. After Livinggood began work in the spring, Aaron Balsdon twice drove in front of Livinggood's tractor, told him the lease was invalid, and threatened to call law enforcement. On both occasions, Livinggood or his son stopped working and left the property. Livinggood then sued Aaron Balsdon to enforce the lease, claiming damages from his lost profits, and claiming, in the alternative, triple damages for Balsdon's forcible exclusion of Livinggood from the leased land. The district court found Livinggood held a valid lease to farm the land. The district court awarded Livinggood damages based on one year of lost profits plus court costs, $15,106.92 in total, stating any other damages would be too speculative and too difficult to ascertain. The district court did not allow Livinggood to continue farming under his lease, nor did the court grant triple damages for forcible exclusion from the property. Livinggood appealed. In *Livinggood v. Balsdon*, 2006 ND 11, ¶¶ 7–9, 709 N.W.2d 723, this Court agreed with the district court that Livinggood could no longer enforce the lease because money damages were adequate to compensate him. We remanded the case because the district court made no findings on damages under the correct legal standard for forcible ejectment or exclusion from real property. *Livinggood*, at ¶¶ 10–11.

[¶ 3] On remand, the district court concluded that "[w]hile the force may not have been actually applied it was clearly threatened." Furthermore, the district court concluded:

[Livinggood] made several attempts to resolve this which [Balsdon] ignored. [Livinggood] testified he felt compelled to tell his son to leave to avoid a big fight. His impression clearly was physical force or force of some kind would follow if they failed to leave the proper-

ty. There was also a threat to call the police.

All of these facts combined indicate the defendant did forcibly eject the plaintiff from the property. . . .

Consequently, the district court awarded Livinggood treble damages, using its original damage calculation of lost profits for one year, multiplied by three, plus court costs. Balsdon now appeals that judgment.

[¶ 4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 27–02–04 and §§ 28–27–01 through 28–27–02.

## II

[¶ 5] Balsdon impliedly argues that the district court should have held a hearing on remand. Livinggood argues that not having a hearing on remand was within the district court's discretion because this Court did not explicitly require one. In *Kautzman v. Kautzman*, we addressed the issue of conducting hearings on remand:

> When this Court specifies a defect to be cured and remands for redetermination of an issue without specifying the procedure to be followed, the trial court need only rectify the defect in a manner consistent with our opinion and conformable to law and justice. . . . Thus, when we reverse and remand for a trial court to address an issue . . . unless otherwise specified, the trial court may decide based on the evidence already before it or may take additional evidence. The decision on taking additional evidence will be reversed only if the trial court abused its discretion.

2000 ND 116, ¶ 7, 611 N.W.2d 883 (internal citations omitted).

[¶ 6] In this case, we remanded "with directions to consider the issue of treble damages under N.D.C.C. § 32–03–29 and the standard set out in *Wegner [v. Lubenow,* 12 N.D. 95, 95 N.W. 442 (1903) ]." *Livinggood,* 2006 ND 11, ¶ 11, 709 N.W.2d 723. The district court heard all the testimony relating to damages and the actions of the parties in the original proceeding. The final judgment consisted of multiplying the original one-year lost-profit figure by three. Neither *Wegner* nor N.D.C.C. § 32–03–29 requires a hearing. Balsdon admits in his brief that although he disagrees with the facts found by the district court, "there was a sufficient basis for the trial court to have found those facts from the evidence at trial." Therefore, the district court did not abuse its discretion by not holding a hearing on remand.

## III

[¶ 7] Balsdon argues that his actions to prevent Livinggood from farming under the lease did not amount to forcible ejection, because Livinggood failed to prove he feared physical force from Balsdon or law enforcement. Balsdon also argues that he never deceived Livinggood in any way and that deception is necessary for forcible ejectment. Balsdon argues that because Livinggood produced no evidence of forcible ejectment, the award of treble damages should not stand. Livinggood claims he feared physical force from both Balsdon and law enforcement because, upon such a threat, one assumes law enforcement may necessarily use force to remove a person from the land. Livinggood argues it was that fear that caused him to leave the property.

[¶ 8] Forcible ejectment or exclusion from real property is a conclusion of law because "that determination describes the legal effect of the underlying factual circumstances." *See Diocese of Bismarck Trust v. Ramada, Inc.,* 553 N.W.2d 760, 768 (N.D.1996) (internal citation omitted).

We apply a de novo standard of review to a district court's conclusions of law. *H–T Enterprises v. Antelope Creek Bison Ranch*, 2005 ND 71, ¶ 6, 694 N.W.2d 691.

[¶ 9] Section 32–03–29, N.D.C.C., provides the tort of forcible ejectment or exclusion from real property:

For forcibly ejecting or excluding a person from the possession of real property, the measure of damages is three times such a sum as would compensate for the detriment caused to the person by the act complained of.

A district court must award treble damages if it concludes that one person forcibly ejected or excluded another from real property. N.D.C.C. § 32–03–29. First, the district court must analyze the ejecting party's conduct and surrounding circumstances to determine whether there was sufficient evidence that the possessor apprehended fear and that fear caused the possessor to leave. *Wegner*, 12 N.D. at 105, 95 N.W. at 446. Second, upon the conclusion of forcible ejectment supported by its findings of fact, the district court shall apply the measure of damages under N.D.C.C. § 32–03–29. That code section was taken from David Dudley Field's Code and adopted decades before North Dakota became a state. Hon. Robert Vogel, *Looking Back on a Century of Complete Codification of the Law*, 53 N.D. L.Rev. 225, 235 (1976) ("[W]e must recognize that they gave to the sparsely settled wilderness of Dakota an instant body of law, up-to-date and reasonably adaptable to immediate use. There simply was not time to develop a body of law by common-law methods, and the choice appeared to be between codification or anarchy and vigilante justice."). Because this law is punitive in nature, it provides an incentive for our citizens to use the justice system even for "petty outrages" rather than allow such disputes to devolve into the violence of vigilantism. *See* W. Page Keeton, et al.,

*Prosser and Keeton on the Law of Torts* § 2 (5th ed.1984) (discussing the policy reasons for the award of punitive damages). Despite the passage of a century, this Court's 1903 decision, *Wegner v. Lubenow*, still serves as our guiding principle for bringing into present day the antebellum origins of North Dakota Century Code section 32–03–29 and defining the tort of forcible ejectment contained within its venerable language.

### A

[¶ 10] Forcible ejectment from real property does not require the actual application of physical force; rather, "[i]t is enough if it is present and threatened, and is justly to be feared." *Wegner*, 12 N.D. at 96, 95 N.W. at 442 Syll. ¶ 4. "[A] show of force and threats" accomplishing the same result as physical removal is enough. *Id.* at 105, 95 N.W. at 446 "It is not necessary for the claimant to wait until actual violence is resorted to." *Id.* (internal citation and quotation marks omitted). The standard requires only "that the plaintiff had reason to believe that he would be put out by the application of physical force if he did not obey. . . ." *Id.* The *Wegner* court based its holding of forcible ejectment on the threatening actions of a person posing as a deputy sheriff:

[he] came to the plaintiff's house and represented that he was a deputy sheriff, and, after producing papers purporting to be of an official nature, *threatened to put the plaintiff out of possession.* [He] was not a deputy sheriff, and in fact no action had been instituted to recover possession. The plaintiff yielded possession under the direction of the supposed officer, and under circumstances from which the jury might properly find that the plaintiff had reason to believe that he would be put out *by the application of physical force if he did not obey* the commands of the supposed officer.

*Wegner,* 12 N.D. at 105, 95 N.W. at 446 (emphasis added); *but see Woodring v. Winner Nat'l Bank,* 56 S.D. 43, 227 N.W. 438 (1929) (holding that forcible ejectment does not apply when a law enforcement officer acting under a court order threatens to arrest a person accused of hindering a bankruptcy proceeding in order to remove him from the real property at issue in that case). ·

[¶ 11] Adhering to the *Wegner* standard, in *Livinggood* we distinguished *Helgeson v. Locken,* 130 N.W.2d 573, 574–75 (N.D.1964), previously relied upon by Balsdon: ·

> the trial court gave a jury instruction which defined forcibly ejecting or excluding a person from the possession of real property as "force of an unusual kind which tends to bring about a breach of the peace, such as an injury with a strong arm, or a multitude of people, or in a riotous manner, or with personal violence, or with threat or menace to life or limb, *or under circumstances which would naturally inspire fear.*" However, as this Court observed, that instruction was the settled law of the case because there was no objection to the instruction. The instruction does not necessarily reflect the law to be applied in all similar cases.

*Livinggood,* 2006 ND 11, ¶ 10, 709 N.W.2d 723 (emphasis added). Despite the rather menacing language in the first part of the description, the definition of force in *Helgeson* also includes "or under circumstances which would naturally inspire fear." *Id.* This clause, although it conforms to the *Wegner* standard, when paired with the other terms of actual physical violence, muddles the definition of force. Therefore, we limit the *Helgeson* definition of force to that case.

[¶ 12] In this case, the district court found conduct greater than mere statements, finding instead overt acts by Balsdon, concluding that Balsdon forcibly ejected Livinggood:

### (I)(B)

On May 9th, [Livinggood's] son was out in the field seeding and Aaron Balsdon and another man pulled in front of the tractor. They told [Livinggood's] son the contract (referring to the lease) was no f——— good. [Livinggood] said instead of a big fight he told his son to go home.

### (I)(C)

[Livinggood] said he then tried to contact [Balsdon] a number of times because [Balsdon] had said he was talking to a lawyer. When [Balsdon] did not respond to messages [Livinggood's] son went back on the 27th of May to seed the field. Aaron Balsdon once again pulled in front of [Livinggood's] tractor and then called [Livinggood] at work. [Livinggood] testified that [Balsdon] told him that his contract was no good and to get the cultivator out of there or he was going to call the cops.

. . . .

### (I)(E)

When Aaron Balsdon testified he confirmed that he went to the field on two occasions when [Livinggood's] son attempted to seed it and that he threatened to call the police and possibly swore at them.

[¶ 13] Balsdon further argues that *Wegner* requires deception, such as impersonating law enforcement and having that person serve fake documents, because that was the method used in that case. While it is true that the ejecting party in *Wegner* hired someone to impersonate a sheriff and serve fake documents, Balsdon's argument fails because the presence and result

of the threat rather than its form of delivery controls. Livinggood or his son left the property as a result of Balsdon's actions: twice coming onto the property with another man, driving in front of the tractor, claiming the lease was invalid, and threatening to call law enforcement. Therefore, the district court did not err in concluding that Balsdon forcibly ejected Livinggood. Having found Balsdon forcibly ejected Livinggood, the next step requires the calculation of actual damages to be trebled.

### B

[¶ 14] "The appropriate standard of review in an appeal challenging a trial court's award of damages in a bench trial is whether the trial court's findings of fact on damages are clearly erroneous." *Buri v. Ramsey,* 2005 ND 65, ¶ 17, 693 N.W.2d 619 (citations omitted). "Under N.D.R.Civ.P. 52(a), a finding of fact is clearly erroneous if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law." *Id.* (citation omitted).

[¶ 15] Nearly 25 years before North Dakota became a state and in the burgeoning wake of settlers generated by the Homestead Act of 1862, section 1977 of the Revised Codes of the Territory of Dakota, taken from Field's Code, provided the measure for damages for forcibly ejecting or excluding a person from real property that has remained virtually unchanged for more than a century:

> For forcibly ejecting or excluding a person from the possession of real property, the measure of damages is three times such a sum as would compensate for the detriment caused to the person by the act complained of.

N.D.C.C. § 32–03–29.

[¶ 16] At trial, the district court calculated one year of lost profits based on Livinggood's testimony about profits he had earned on comparable farmland, summarized as follows:

| | |
|---|---:|
| 76 acres at 65 bushels/acre: 4,940 bushels | |
| 4,940 bushels at $4.30 per bushel | $21,242.00 |
| Plus Farm Service Agency | |
| Program Payments | 1,202.00 |
| | |
| Total Income | $22,444.00 |
| | |
| Fall Expense to include Cash Rent | $ 4,768.05 |
| Seed (2 bushels × 76 acres at $5/bushel) | 760.00 |
| Combining (76 acres at $15/acre) | 1,140.00 |
| Spray (76 acres at $6/acre) | 456.00 |
| Crop Insurance (76 acres at $6/acre) | 456.00 |
| | |
| Total Expenses | $ 7,580.05 |
| | |
| Net Profit | $14,863.95 |

On remand, the district court calculated treble damages by multiplying the lost-profits figure by three and then added court costs for a total judgment of $44,834.82.

[¶ 17] In his brief, Balsdon admits "there was a sufficient basis for the trial court to have found those facts from the evidence at trial." Balsdon concentrates his argument on forcible ejectment and fails to refute any of the damage figures, other than his general statement that he does not agree with the facts in the amended judgment. Because the district court heard all the testimony and received all the evidence regarding damages and then applied those facts to the standards directed by this Court, the district court's findings of fact are not clearly erroneous.

[¶ 18] We affirm the judgment of the district court.

[¶ 19] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.